E. Kevan Rowlee, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 12096–81.     Filed June 15, 1983.

E. Kevan Rowlee, pro se.
*Sandra Gilmore* and *John E. White*, for the respondent.

OPINION

Cohen, *Judge*: In a notice of deficiency dated March 12, 1981, respondent determined deficiencies and additions to tax as follows:

| Year | Deficiency | Additions to tax sec. 6653(b)[1] |
|------|-----------|----------------------------------|
| 1977 | $1,589 | $794.50 |
| 1978 | 980 | 490.00 |
| 1979 | 509 | 254.00 |

---

[8]$253,568.85 × $\frac{\$140,872.71 \text{ (non-exempt income)}}{\$625,872.71 \text{ (total award)}}$ = $57,073.80

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of

The only genuine controversy concerns the correctness of respondent's determination with respect to the additions to tax. Other procedural and substantive issues are discussed, however, because the lack of merit in petitioner's position as to each is relevant to the issue of fraud.

## Factual Background

Petitioner resided in Fulton, N.Y., at the time he submitted his petition herein. Petitioner completed high school and, although he did not graduate from college, attended a total of 3 or 4 years of college classes at Wesley College, Oswego State College, Lester College, Syracuse University, and the University of Maryland. Beginning in the early 1970's, petitioner belonged to a philosophy study class, which studied philosophy, economics, the Bible, different religions, and the Constitution. In about 1975, the class studied law cases and the Constitution. Petitioner proclaims that he has knowledge of "the laws."

Petitioner and his wife timely filed a joint 1975 income tax return. On that return, petitioner reported wages, dividend, interest, and rental income. Petitioner also itemized his deductions, claiming deductions for medical expenses, taxes, interest, and charitable contributions. He reported a long-term capital loss from the sale of shares of two mutual funds, and claimed depreciation and other expenses attributable to rental property, employee business expense deductions related to the use of his automobile for business purposes, and a home office expense deduction.

During 1977 and 1978, petitioner worked with Oswego Warehousing, Inc. (Oswego Warehousing), in Oswego, N.Y., and received compensation of $10,345.92 and $7,830.01, respectively. Petitioner exchanged his labor for the checks or cash he

1954 as amended and in effect during the years in issue, and all references to Rules are to the Rules of Practice and Procedure of the United States Tax Court.

received from Oswego Warehousing during those years. On or about March 9, 1978, petitioner submitted a W-4 form to Oswego Warehousing on which he claimed that he was exempt from tax. No Federal tax other than social security tax was withheld by Oswego Warehousing from payments made to petitioner during 1977 and 1978.

During 1979, petitioner worked with W. T. Anderson Ford, Inc. (Anderson Ford), in Fulton, N.Y., and received $5,854.25. Petitioner exchanged his labor for checks or cash received from Anderson Ford during that year. On or about June 18, 1979, petitioner submitted a W-4 form to Anderson Ford on which he claimed 10 exemptions. No Federal tax other than social security was withheld by Anderson Ford from payments made to petitioner during 1979. The only reason that petitioner initially claimed 10 exemptions on the W-4 form submitted to Anderson Ford was that he was informed by that company that he would be fired if he claimed more than 10 exemptions or that he was exempt from tax. On or about May 11, 1980, petitioner submitted a W-4 form to Anderson Ford on which he claimed that he was exempt from tax; petitioner was shortly thereafter fired by Anderson Ford.

Oswego Warehousing and Anderson Ford sent to petitioner copies of W-2 forms reporting payments made to petitioner during the years in issue. Petitioner did not file any Federal income tax returns for the calendar years 1977, 1978, or 1979. Petitioner claims that he was not required to file returns because he is a "natural unfranchised individual and freeman"; that the 16th Amendment to the Constitution only permits a tax on income rather than on the source of income; that the tax laws set forth in the Internal Revenue Code are unconstitutional because they tax the source rather than the income; that gain is a prerequisite to income; and that he received no gain or profit because his labor was capital and the compensation received for his services was equal to the value of his labor.

After respondent began an investigation of petitioner's failure to file income tax returns for the years in issue, petitioner became very vocal in espousing his political beliefs, particularly his disagreement with the income tax laws. Petitioner was unsuccessful in attempts to cause various officials of the Internal Revenue Service to discuss his legal

theories. Petitioner refused to submit any financial information to respondent, contending that he was not obligated to do so because he did not have any income. On or before April 15, 1982, petitioner sent to the Syracuse Post-Standard newspaper a copy of an undated letter to Donald Regan, Secretary of the Treasury, stating petitioner's views as to the income tax.

Petitioner has attached to his brief hundreds of pages of books on various subjects, including a totally unapt comparison of the United States to Nazi Germany. The credibility and persuasiveness of petitioner's arguments are adversely affected by his penchant for hyperbole. We address only those points dealing with petitioner's liability for income tax and additions to tax and ignore the balance of his political statements. Before dealing with substantive issues, however, it is appropriate to dispose of certain procedural contentions of petitioner.

## *Procedural Issues*

First, petitioner contends that the Tax Court is unconstitutional because it is not created under article III of the Constitution. The constitutionality of the Tax Court has been repeatedly upheld on the basis of congressional authority to create specialized courts under article I of the Constitution. See, e.g., *Raetzsch v. United States*, 575 F.2d 549 (5th 1978); *Stix Freidman & Co. v. Coyle*, 467 F.2d 474 (8th Cir. 1972); *Nash Miami Motors, Inc. v. Commissioner*, 358 F.2d 636 (5th Cir. 1966), cert. denied 385 U.S. 918 (1966); *Martin v. Commissioner*, 358 F.2d 63 (7th Cir. 1966), cert. denied 385 U.S. 920 (1966); *Jennemann v. Commissioner*, 67 T.C. 906 (1977). Petitioner's reliance on *Northern Pipeline Construction Co. v. Marathon Pipe Line, Co.*, 458 U.S. ____(1982), is misplaced. The Supreme Court, there, held unconstitutional the broad grant of jurisdiction to bankruptcy courts over, inter alia, State law contract claims by the Bankruptcy Act of 1978. The Supreme Court noted that the act did not constitute bankruptcy courts legislative courts under article I. (458 U.S. at ____n. 13.) Compare sec. 7441. The Court further noted that legislative courts had been upheld where created to resolve public rights, i.e., cases between the Government and its citizens, but that the Bankruptcy Act unconstitutionally gave bankruptcy

courts jurisdiction over disputes between private parties. Compare sec. 7442.[2]

Second, petitioner claims that he has been wrongfully denied a jury trial. The Seventh Amendment does not apply to suits against the United States, because there was no common law action against the sovereign. *McElrath v. United States*, 102 U.S. 426, 440 (1880). Thus, it has repeatedly been held that there is no constitutional right to a jury trial in the Tax Court. *Phillips v. Commissioner*, 283 U.S. 589, 599 n. 9 (1931); *McCoy v. Commissioner*, 696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); *Lonsdale v. Commissioner*, 661 F.2d 71, 72 (5th Cir. 1981), affg. a Memorandum Opinion of this Court; *Dorl v. Commissioner*, 507 F.2d 406 (2d Cir. 1974), affg. 57 T.C. 720 (1972).

Third, petitioner claims that he was wrongfully denied discovery and a continuance of the trial for purposes of discovery. Petitioner served on respondent a set of 218 purported interrogatories, which were in essence rhetorical questions ranging from whether or not the Government acknowledges the Constitution and various Supreme Court cases through contentions concerning monopoly; George Orwell's novel 1984; and the Law Merchant. The interrogatories were not reasonably calculated to lead to the discovery of admissible evidence. See Rule 70(b). They served no useful purpose, and continuance of the case would merely have prolonged the dilatory course of conduct engaged in by petitioner. See *Mid-Continent Supply Co. v. Commissioner*, 571 F.2d 1371, 1376 (5th Cir. 1978), affg. 67 T.C. 37 (1976).

Fourth, petitioner complains of an order that certain matters be deemed stipulated pursuant to Rule 91(f). The order was made after petitioner refused to stipulate to the amount of

---

[2]Petitioner's argument that he was tricked by respondent into filing a petition in this Court, which he claims is "administered by the I.R.S.," is inconsistent with the facts and is not worthy of serious discussion. This argument is part of his attack on the statutes under which the Court is established and its jurisdiction defined. These laws, of course, were adopted by Congress acting in accordance with the legislative authority vested in Congress by the Constitution. Congress consists of representatives elected in accordance with the republican principles of government that petitioner purports to espouse. The essence of the matter is that petitioner does not agree with those laws and attacks the Court for applying them and respondent for administering them. Needless to say, even if the Court agreed with petitioner's philosophy, the Court is bound to uphold the laws as they exist and not as petitioner would like them to be.

his wages, the W-4 forms he had submitted to employers, W-2 forms issued by his employers, and other essentially undisputed items. Petitioner's objection to the proposed stipulation was based upon the characterization of the amounts paid to him as wages or income, and he proposed certain stipulations in lieu of those proposed by respondent. In ordering the facts and evidence recited in respondent's proposed stipulation to be established for purposes of this case, the Court reserved to petitioner the right to offer additional evidence to rebut the truth of assertions within stipulated exhibits and the right to make relevancy objections at the time of trial. Because there was no real dispute concerning the underlying facts, the order in no way prejudiced petitioner. In any event, the facts found above are based entirely on petitioner's proposed stipulations, which were incorporated into his testimony as an exhibit, and his own testimony during trial. Under these circumstances, neither the Government's proposed stipulation nor the order implementing it has independent significance. Cf. *McKenzie v. Commissioner*, 59 T.C. 139, 145-146 (1972), affd. per curiam 486 F.2d 1401 (5th Cir. 1973).

Fifth, petitioner complains that he was not confronted by his "accuser," whom he deems to be the District Director of Internal Revenue for the Buffalo District, whose signature appears on the notice of deficiency. This proceeding, of course, is a civil proceeding instituted by petitioner seeking redetermination of a deficiency pursuant to section 6213(a). The determination of an addition to tax for fraud does not change this into a criminal proceeding, and protections applicable to criminal sanctions, such as the right of confrontation, do not apply. *Helvering v. Mitchell*, 303 U.S. 391, 402–404 (1938); *Black Forge, Inc. v. Commissioner*, 78 T.C. 1004, 1013 (1982). As indicated above, all of the factual findings in this case are based upon petitioner's testimony. He was therefore not prejudiced by the failure of respondent to appear in Court other than through attorneys or the refusal of the Court to allow him to cross-examine under oath the attorneys for respondent.

Sixth, petitioner complains of allegedly prejudicial remarks made by the Court during a conference in chambers prior to trial and other alleged indicia of bias. In denying the continuance for discovery purposes stated above, the Court did

indicate that discovery would not accomplish any purpose and that, if petitioner pursued his claims that wages were not taxable income, he was bound to lose that argument. That issue, of course, was so well settled as a matter of law that it could have been determined on motion for summary judgment. See Rule 121,[3] and cases cited *infra* on the substantive issue. The Court never indicated any prejudgment on issues of fact, and petitioner was granted substantial leeway in presenting evidence at trial with respect to whether or not the additions to tax for fraud should be imposed.[4]

Seventh, petitioner complains of the Court's refusal to admit into evidence an "affidavit" from a purported "teacher of English, Latin and related subjects (1946–1980) Retired," dated 2 days before the trial, and a copy of a letter from a New York State senator to Chief Counsel of the Internal Revenue Service dated March 19, 1981. The English teacher's affidavit analyzes the structure of the 16th Amendment to the end of concluding that "source is not to be equated with income as these terms are used in the above quoted sentence." The State senator's letter states, inter alia, that:

Any argument which concludes that wages exceed the value of services must be rejected out of hand. Therefore, unless the Congress specifically autho-

---

[3] See *Knighten v. Commissioner*, 702 F.2d 59 (5th Cir. 1983), affg. an unreported order of this Court; *Stamper v. Commissioner*, T.C. Memo. 1983–248 (in which damages were awarded pursuant to sec. 6673); *Sommer v. Commissioner*, T.C. Memo. 1983–196; *Callow v. Commissioner*, T.C. Memo. 1982–193; *Horner v. Commissioner*, T.C. Memo. 1981–37; *Callow v. Commissioner*, T.C. Memo. 1981–271 and T.C. Memo. 1980–272, affd. per curiam without published opinion (10th Cir. 1981); *Grimes v. Commissioner*, T.C. Memo. 1979–514, affd. in an unpublished order (9th Cir., Dec. 18, 1980); *Parkinson v. Commissioner*, T.C. Memo. 1979–319, affd. per curiam 647 F.2d 875 (9th Cir. 1981).

[4] The thrust of petitioner's argument concerning bias is that the Court repeatedly ruled against him. He states:

"During 'trial' respondent's attorney further accused petitioner of willful failure to obey tax regulations and of being an illegal tax-protestor. No one from the IRS (respondent) would be sworn in at the 'trial' so that petitioner could cross examine his accusers. At this point an impartial court would have rendered a default judgement in favor of petitioner, a layman, acting on his own without benefit of a trial lawyer.

"Impartiality is an impossibility with the tax court, it is clearly the hand maiden of the Internal Revenue Service."

It would indeed be ironic if following well-established legal rules and applying the law were indicia of bias. Obviously it is not. See *United States v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980); *United States v. Carroll*, 567 F.2d 955, 958 (10th Cir. 1977); *United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976); *United States v. Ming*, 466 F.2d 1000, 1002–1004 (7th Cir. 1972); *United States v. Anderson*, 433 F.2d 856, 860 (8th Cir. 1970).

rizes a tax on wages, wages are, indeed, outside the scope and contemplation of a tax on income.

The items were inadmissible hearsay, and admitting them as evidence would have been unfair to respondent inasmuch as the authors were not available for cross-examination. The opinions contained in the writings do not relate to any genuine issue of fact, and the writers had not been qualified as experts; therefore there was no foundation for admission of the opinions under rules 701, 702, and 704, Federal Rules of Evidence. The writings were dated long after petitioner failed to file income tax returns for the years in question, and the statements of other persons agreeing with petitioner are not relevant to the only genuine issue of fact in controversy, to wit, the question of whether petitioner had a fraudulent intent when he failed to file his income tax returns. Finally, the theories expressed in the writings are not relevant because neither writing has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Fed. R. Evid. See discussion of substantive issues *infra*.

Eighth, petitioner has filed a motion after trial to correct the trial transcript. Some of the items are harmless typographical errors or misspellings. In other instances, petitioner seeks to complete sentences that were interrupted during the trial. None of the proposed "corrections" affect any issue. Nonetheless, so that petitioner may be given the benefit of every doubt, the motion will be granted and the transcripts may be deemed to read as petitioner contends solely for purposes of this case.[5]

A future complaint may be anticipated by reason of the Court's denial of petitioner's last minute motion for a 60-day extension of time to reply to respondent's brief. In granting a third request by petitioner for additional time to file his opening brief, the Court warned that no further extension would be granted to him. Petitioner has had approximately 6 months after trial to present his position. He should have

---

[5]One of the "corrections" sought by petitioner would complete an interrupted sentence of the Court to show a ruling in his favor, to wit, sustaining his objection on grounds of relevance to evidence that he did not file tax returns for 1980 or 1981. Respondent's brief does not contain any argument with respect to that evidence.

researched the basic issues before deciding not to file tax returns in purported reliance on his legal theory. He cites personal problems in support of his latest motion that suggests that he will be best served by early disposition of this case. In view of the nature of the issues, no further briefs are necessary or useful, and no further delays are warranted.

## Substantive Contentions

### Payments Received for Labor

In *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601 (1895), the U.S. Supreme Court held unconstitutional a tax on incomes derived from property. It conceded at that same time, however, that taxes on income from "professions, trades, employments or vocations" were valid. The entire statute was voided on the ground that Congress did not intend to permit the entire "burden of the tax to be borne by professions, trades, employments, or vocations." 158 U.S. at 637.

In 1913, the 16th Amendment to the Constitution was adopted. It provides as follows:

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

In 1916, the Supreme Court held the 1913 income tax law to be constitutional. *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1 (1916). The propriety of taxing incomes from professions, trades, employments, or vocations was reaffirmed, the Court stating that in the *Pollock* case "its validity was recognized; indeed, it was expressly declared that no dispute was made upon that subject and attention was called to the fact that taxes on such income had been sustained as excise taxes in the past." 240 U.S. at 17.

In *Eisner v. Macomber*, 252 U.S. 189 (1920), the Supreme Court was concerned with the taxability of stock dividends. By way of dicta, the Court referred to income as "gain derived from capital, from labor, or from both combined." 252 U.S. at 207.

Section 61(a) of the Internal Revenue Code of 1954, as amended, states that "gross income means all income from whatever source derived, including (but not limited to) * * * compensation for services." Petitioner has admitted that he

exchanged his labor for the amounts paid to him by his employers during the taxable year. He argues that taxation of the amounts paid to him in exchange for his labor is a tax on the "source" of income and not on the income itself. This "taxation on source" argument is spurious; the tax is imposed on the money he receives for his services, not on the performance of those services. Similarly unworthy of extended comment is petitioner's assertion that he is not a "person liable" for tax. See secs. 1, 6001, 6011, 6012; *United States v. Moore*, 692 F.2d 95 (10th Cir. 1979, as amended Oct. 26, 1982); *United States v. Slater*, 545 F. Supp. 179 (D. Del. 1982). Finally, petitioner claims that he did not have any taxable income or "gain" because the value of his labor was the same as (or more than) the payment he received for it.

Petitioner's position has been repeatedly rejected by this and other courts. See, e.g., *Reading v. Commissioner*, 70 T.C. 730 (1978), affd. 614 F.2d 159 (8th Cir. 1980), in which the Court said:

> It is difficult, if not impossible, to respond to arguments such as petitioners have put forth without becoming embroiled in a game of semantics. The logical force requiring rejection of their arguments—apart from their assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law, to decide the questions dispositive of this case—is essentially a matter of the definition of terms.
> \* \* \*
> Nevertheless, accepting the conclusion that some kind of "gain" must be realized for there to be income, the flaw in petitioners' analogy of what they call the "cost of doing labor" to the "cost of goods sold" concept—essentially its failure to acknowledge the difference between people and property—may be shown. The "cost of goods sold" concept embraces expenditures necessary to acquire, construct or extract a physical product which is to be sold; the seller can have no gain until he recovers the economic investment that he has made directly in the actual item sold. Labor, on the other hand, is, in the current context, behavior performed by human beings in exchange for compensation. \* \* \* [70 T.C. at 733. Citations omitted.]

Thus, the Court held that the taxpayer could not deduct his living expenses as the "cost" of producing his labor.[6] See also

---

[6]Another useful discussion of the question of "gain" appears in *Hellermann v. Commissioner*, 77 T.C. 1361 (1981). In that case, the Court held that gain attributable solely to inflation, though nominal, was income within the meaning of the 16th Amendment. The Court stated in part:

"As our second ground for rejecting petitioners' arguments, we rely upon the doctrine of common interpretation. As was stated by Judge Learned Hand, "[the] meaning [of income] is

*Lonsdale v. Commissioner*, 661 F.2d 71 (5th Cir. 1981), affg. a Memorandum Opinion of this Court; *United States v. Buras*, 633 F.2d 1356, 1361 (9th Cir. 1980) (in which defendant's contention was rejected in affirming his criminal conviction of failure to file timely returns); and *Rice v. Commissioner*, T.C. Memo. 1982–129, in which the specific error in petitioner's reasoning was explained as follows:

The Supreme Court early established the principle that the word "income", as it is used in the Sixteenth Amendment, is to be construed according to its common, everyday meaning. In *Lynch v. Hornby*, 247 U.S. 339, 344 (1918), the Court stated, " * * * Congress was at liberty under the [Sixteenth] Amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word * * * ." Under this principle, the ordinary, and perhaps most common, meaning of "income" has been wages. Thus, when a coal company argued before the Supreme Court that the proceeds from its sale of ore, which it had dug from its properties, were the return of depleted capital, not income, the Court dismissed the argument, observing, "the same is true of the earnings of the human brain and hand when unaided by capital, yet such earnings are commonly dealt with in legislation as income." *Stratton's Independence v. Howbert*, * * * [231 U.S. 399, 415 (1913)]. This quote illustrates that whether or not wages can be characterized as the product of an exchange, they are still income within the Constitutional embrace.

Mr. Rice misconstrues the oft-cited phrase that income is "gain derived from capital, from labor, or from both combined" to mean that wages are not income. Wages are "derived" from labor or services in the sense that they cannot be gained without such labor. Although the wages received by Mr. Rice may represent no more than the time-value of his work, they are nonetheless the fruit of his labor, and therefore represent gain derived from labor which may be taxed as income.

Even if we were to agree with Mr. Rice's contention that wages are, in effect, an exchange of equal value for value, he would still be taxable upon the wages he and Mrs. Rice received in 1978. The general doctrine that

---

* * * to be gathered from the implicit assumptions of its use in common speech." *United States v. Oregon-Washington R. & Nav. Co.*, 251 F. 211, 212 (2d Cir. 1918). Thus, the meaning of income is not to be construed as an economist might, but as a layperson might. Petitioners received many more dollars for the buildings than they had paid for them. The extra dollars they received are well within the common perception of income, even though each 1976 dollar received represents less purchasing power than each 1964 dollar paid. Petitioners' nominal gain may or may not equal their real gain in an economic sense. Nonetheless, neither the Constitution nor tax laws 'embody perfect economic theory.' See *Weiss v. Wiener*, 279 U.S. 333, 335 (1929). [77 T.C. at 1366.]"

It is also worth repeating the words of Justice Holmes: "A constitution is not intended to embody a particular economic theory. * * * It is made for people of fundamentally differing views." *Lochner v. New York*, 198 U.S. 45, 75–76 (1905).

receipts representing a return of capital are not taxed does not apply when a taxpayer has a zero basis in the property he exchanged for the receipts. * * * [7]

[Fn. refs. omitted.]

In granting an injunction against a return preparer who had fraudulently misled taxpayers into violating the Internal Revenue Code by filing so-called "Eisner v. Macomber" returns (i.e., asserting that wages are not income because of the absence of "gain"), a U.S. District Court has said that:

it is clear that wages, salaries, and any other things of value received in exchange for work performed are income within the meaning of the Sixteenth Amendment to the United States Constitution, and the Internal Revenue Code. The etymology of the word "income" reveals that it is a compound word meaning "that which comes in." Whether or not something is income does not depend on whether what comes in is received in exchange for something else. [*United States v. May*, 555 F. Supp. 1008, 1009 (E.D. Mich. 1983). Fn. ref. omitted.]

## Withholding Requirements

Based upon his argument that his wages are not taxable income, petitioner asserts that withholding of tax from his wages violates his Fifth Amendment right not to be deprived of property without due process of law. This contention also lacks merit. *Brushaber v. Union Pacific Railroad Co., supra; Charles C. Steward Machine Co. v. Davis*, 301 U.S. 548 (1937); *Abney v. Campbell*, 206 F.2d 836 (5th Cir. 1953), cert. denied 346 U.S. 924 (1953); *United States v. Smith*, 484 F.2d 8 (10th Cir. 1973), cert. denied 415 U.S. 978 (1974); *Campbell v. Amax Coal Co.*, 610 F.2d 701 (10th Cir. 1979). The provision in section 3402 requiring employees to file W-4 statements with their employers does not violate petitioner's Fifth Amendment right against self-incrimination. *United States v. Smith, supra.* Petitioner has not made any effort to show any relationship between the information required on the W-4 form and a real and appreciable danger of criminal prosecution at the time he

---

[7]See also *Stamper v. Commissioner, supra; Howell v. Commissioner*, T.C. Memo. 1981–631; *Funk v. Commissioner*, T.C. Memo. 1981–506, affd. 687 F.2d 264 (8th Cir. 1982); *Voelker v. Commissioner*, T.C. Memo 1981–67; *Crisman v. Commissioner*, T.C. Memo. 1980–361, affd. 642 F.2d 1212 (5th Cir. 1981); *Thomas v. Commissioner*, T.C. Memo. 1980–359; *Brooks v. Commissioner*, T.C. Memo. 1980–206; *Hanson v. Commissioner*, T.C. Memo. 1980–197; *Wangrud v. Commissioner*, T.C. Memo. 1980–162.

was required to complete that form. See *Hoffman v. United States*, 341 U.S. 479, 486 (1951).[8]

*Additions to Tax for Fraud*

The 50-percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. *Stoltzfus v. United States*, 398 F.2d 1002, 1004 (3d Cir. 1968); *Webb v. Commissioner*, 394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Gajewski v. Commissioner*, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. *Beaver v. Commissioner*, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *Stone v. Commissioner*, 56 T.C. 213, 223–224 (1971); *Otsuki v. Commissioner*, 53 T.C. 96, 105–106 (1969).

Failure to file tax returns, without more, is not proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes. *Stolzfus v. United States, supra; Cirillo v.*

---

[8]Petitioner has at various stages of these proceedings referred to his privilege against self-incrimination. He has not at any time, however, established a predicate for that claim in response to a particular question or requirement of production of particular information. See generally *United States v. Rylander*, 460 U.S. ___(1983); *United States v. Neff*, 615 F.2d 1235 (9th Cir. 1980).

*Commissioner*, 314 F.2d 478, 482 (3d Cir. 1963), revg. a Memorandum Opinion of this Court.[9] Failure to file, however, may be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. *Beaver v. Commissioner, supra* at 93. Here, there is no question that petitioner's purpose was to avoid, and not merely to postpone, the payment of taxes that he claims he was not obligated to pay. On the basis of the entire record, the failure to file must be viewed as conduct intended to conceal petitioner's noncompliance with the law. The burden on respondent to both locate and assess a delinquent taxpayer is, in a sense, greater than the verification of items reported on a return that has been filed but may be false. And, as stated in *Helvering v. Mitchell, supra*, it is that necessity for which the Government is to be compensated by the addition to tax.

Petitioner contends that he could not have intended to conceal his conduct because of his attempts to confront various agents of respondent. But those attempts, and the publication of petitioner's letter to the Secretary of the Treasury, occurred long after the time for filing his returns had passed. Contrast *Raley v. Commissioner*, 676 F.2d 980 (3d Cir. 1982), revg. T.C. Memo. 1980–571;[10] *Muste v. Commissioner*, 35 T.C. 913, 921 (1961).[11] Petitioner is free to argue his economic theories to Congress, but he cannot disregard the laws that have been passed by Congress and upheld by the courts; fail to perform an affirmative duty imposed upon him by those laws; proclaim, only when he has been discovered, that those laws are inconsistent with his or another's philosophy; and then expect to avoid the consequences of his avowedly freely exercised disobedience.[12]

---

[9]See, e.g., *Morrell v. Commissioner*, T.C. Memo. 1971–99; *DePumpo v. Commissioner*, T.C. Memo. 1971–115.

[10]We express no view regarding the continued vitality of our opinion in *Raley v. Commissioner*, T.C. Memo. 1980–571.

[11]See also *Jenny v. Commissioner*, T.C. Memo. 1983–1.

[12]In the materials that petitioner has made a part of his brief, there is a statement that "fraud is an indirect form of force." L. Peikoff, Ominous Parallels: The End of Freedom in America 336. Refusal to comply with the law is also an indirect form of force and, when part of a pattern of concealment, may be the equivalent of affirmative fraudulent conduct. See *Spies v. United States*, 317 U.S. 492 (1943). Petitioner attempts to justify his conduct in part by the assertion that the existing tax structure "forces taxpayers to lie and cheat in order to

In this case there is, of course, the additional fact that petitioner prevented the payment of his taxes through withholding by the filing of false W-4 certificates. Notwithstanding his purported belief that he was exempt from tax, this type of self-help is unexcused and essentially inexcusable. A political belief that the law is wrong or a mistaken belief that a statute is unconstitutional and that one has the right to violate it is not a defense to a criminal prosecution for filing a false or fraudulent W-4 form in violation of section 7205. *United States v. Ness*, 652 F.2d 890 (9th Cir. 1981); *United States v. Moss*, 604 F.2d 569 (8th Cir. 1979), cert. denied 444 U.S. 1071 (1980); *United States v. Quilty*, 541 F.2d 172 (7th Cir. 1976); *United States v. Malinowski*, 472 F.2d 850 (3d Cir. 1973). A fortiori, filing of false certificates claiming an excessive number of exemptions or claiming that the taxpayer is exempt from income tax is evidence of fraud by the lesser standard of proof applicable in a civil proceeding. See *Stephenson v. Commissioner*, 79 T.C. 995, 1007 (1982); *Habersham-Bey v. Commissioner*, 78 T.C. 304, 313–314 (1982).[13]

Although petitioner complains that respondent did not cooperate with him by attempting to deal with all of the attacks petitioner was making on the income tax system, petitioner admits that he never provided any financial information to respondent's agents. His refusal to cooperate in the attempt to determine his correct liability is, in the context of this record, further indicia of fraud. See *Powell v. Granquist*, 252 F.2d 56, 60 (9th Cir. 1958); *Grosshandler v. Commissioner*, 75 T.C. 1, 20 (1980); *Gajewski v. Commissioner, supra* at 200.

In summary, petitioner's filing of his tax return for 1975 established his knowledge of his obligation to file and to report payments received for his services and to pay tax thereon. His belatedly proclaimed belief that he was exempt from tax is unpersuasive in view of the total lack of merit to that claim

---

hold onto a portion of their earnings." Petitioner's Brief at 191. This statement implicitly constitutes an admission to the extent that it indicates petitioner's state of mind.

[13]See also *Hebrank v. Commissioner*, T.C. Memo. 1982–496; *Fuhrmann v. Commissioner*, T.C. Memo. 1982–255; and *Fahy v. Commissioner*, T.C. Memo. 1982–37, in which we stated:

"We conclude that petitioner knew what he was doing—i.e., that petitioner was evading the payment of his Federal income tax liability (*United States v. Pomponio*, 429 U.S. 10, 12 (1976)); that he was taking steps to reduce the likelihood that he would be caught; and that he was taking steps to reduce the likelihood that, if he were caught, he would have to pay the taxes he owed."

and the long established authorities showing that his contentions are without merit. His failure to file returns must be viewed, in this context, as an attempt to conceal his noncompliance rather than as a test of the laws that he claims he believed were unconstitutional or unjust. His implementation of his plan to avoid payment of taxes by filing a false W-4 form with his employers provides additional affirmative indications of his motivation. His failure to provide any information from which his correct liability could be determined impeded respondent's efforts to perform his responsibility in administering the law. Fraud has been established by clear and convincing evidence, and the imposition of the additions to tax for fraud in this case is highly appropriate.

*Decision will be entered for the respondent.*