JERRY C. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Johnson v. Commissioner
Docket No. 10888-81
United States Tax Court
T.C. Memo 1983-398; 1983 Tax Ct. Memo LEXIS 390; 46 T.C.M. (CCH) 694; T.C.M. (RIA) 83398; July 12, 1983. *390 1. Held: Amount of unreported income redetermined. 2. Held: Petitioner had self-employment income in 1978 which was subject to self-employment tax. Sec. 1401, I.R.C., 1954. 3. Held,further: Petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a) and 6654, I.R.C., 1954, but is not liable for addition to tax under sec. 6651(a)(2), I.R.C., 1954. Jerry C. Johnson, pro se Willard N. Timm, Jr. for the respondent. DRENNEN
DRENNEN, Judge: Respondent determined deficiencies in and additions to tax in petitioner's 1978 Federal income tax as follows: Additions to tax
[1]
Deficiency
Sec. 6651(a)(1)
sec. 6651(a)(2)
sec. 6653(a)
sec.
6654(a)
$6,456.98
$1,452.82
$161.42
$322.85
$206.62
After concessions, the issues for decision are (1) whether petitioner had unreported income of $22,584 in 1978; (2) whether petitioner is subject to the self-employment tax under section 1401; and, (3) whether petitioner is liable for various additions to tax. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the *391 attached exhibits are incorporated herein by reference. Petitioner Jerry C. Johnson resided in Union City, Ga., at the time the petition was filed herein. During 1978, petitioner was married and supported one child. Petitioner filed with the Internal Revenue Service, Atlanta, Ga., a Form 1040, U.S. Individual Income Tax Return, for 1978, dated April 14, 1979. On the Form 1040, petitioner listed his name, address, social security number, his wife's name and social security number, and the amount of tax withheld from his wages ($473). Petitioner also checked the box indicating that he was married, filing a separate return. The remainder of the spaces in which an income or other figure was to be reported contained double asterisks. [2]
Absent any records from petitioner, respondent determined petitioner's income by reference to a publication prepared by the U.S. Department of Labor, Bureau of Labor Statistics, entitled "A Guide to Living Costs." Specifically, respondent determined that petitioner had *392 unreported income equal to the average total annual costs or expenditures incurred by a family of four living on a higher budget in Atlanta, Ga. Prior to trial, petitioner produced Forms W-2 which showed that for 1978 he had total wages of $12,659.06, Federal income tax withheld of $628.10, and FICA withheld of $765.84. The above wages came from several different employers. During the first 3 months of 1978, petitioner was working as a commissioned salesman for Detroit AutomotivePurchasing Services (Detroit Automotive) and received $3,905 in wages. [3] Thereafter, petitioner quit his job at Detroit Automotive and went to school to learn how to become a welder. From July of 1978 to the end of 1978, petitioner worked as a welder with seven different employers and earned the rest of the wages reflected on the Forms W-2. In years prior to 1978, petitioner derived self-employment income from a procelain repair business. For 1975, 1976, and 1977, petitioner *393 reported income of $3,150, $6,914.14, and $822.93, respectively, from this business. [4] The record does not reveal the amount of income, if any, that petitioner derived from the porcelain repair business in 1978 or that he was ever in the business in 1978. Respondent determined that petitioner had unreported income of $22,584 based upon the Bureau of Labor statistics and that such amount was subject to the self-employment tax imposed by section 1401. Respondent also determined that petitioner was liable for additions to tax for failure to file on time, failure to pay on time, for negligently underpaying tax, and for failure to pay estimated income taxes. OPINION The first issue is whether petitioner had unreported income in the amount determined by respondent. Based upon the Bureau of Labor statistics, respondent determined petitioner had unreported income of $22,584, which is the average amount that a family of four living on a high budget in Atlanta, Ga. expended in 1978. Petitioner contends that compensation for labor does not *394 constitute income, and that the income tax is an indirect tax that violates the Sixteenth Amendment of the U.S. Constitution. Alternatively, petitioner contends that he did not have unreported income in the amount determined by respondent. Respondent disagrees. We hold that compensation for labor does constitute income, that the income tax is constitutional, and that petitioner had unreported income, but in an amount less than that determined by respondent. It is well settled that compensation for labor is income, section 61, I.R.C. (1954), Eisner v. Macomber,252 U.S. 189, 207 (1920); Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 428-430 (1955); Rowlie v. Commissioner,80 T.C. No. 61 (June 15, 1983) Slip Opinion at 14-19, [5] and that the income tax does not violate the U.S. Constitution. Brushaber v. Union Pacific R.R. Co.,240 U.S. 1 (1916). We now turn to the question of the amount of petitioner's unreported income. Section 7602 authorizes the Secretary to examine any books, papers, records, or other data which *395 may be relevant for the purpose of ascertaining the correctness of any return. Where the taxpayer refuses to cooperate in the ascertainment of the income, the Internal Revenue Service has considerable latitude in making determinations of liability. Giddio v. Commissioner,54 T.C. 1530 (1970). Respondent can use various indirect methods of proof to reconstruct a taxpayer's income. One such method, used in the instant case, is to rely on the Bureau of Labor statistics tables. See Giddio v. Commissioner, supra.This method is based on the reasonable assumption that the taxpayer had taxable income at least equal to the normal cost of supporting his family. [6] Petitioner has the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We believe that petitioner has failed to meet his burden of proof to show that he did not have any unreported income during 1978, but that the amount of the unreported income was less than that determined by respondent. Petitioner shortly before trial presented respondent with various Forms W-2 and *396 maintains that these forms reflect all of the income he earned in 1978. These forms W-2 showed total wages of $12,659.06 that petitioner received from eight different employers during 1978, one of them for the first three months of 1978 and seven of them from July through December, 1978. Respondent maintains that since no Forms W-2 for January through June 1978 were produced, [7] petitioner must have had unreported income in the amount determined by respondent during this period. [8] We disagree. Petitioner testified that the reason he did not have any other Forms W-2 for January through June 1978, other than the one for Detroit Automotive, was because he had quit work to learn how to become a welder. The record clearly shows that *397 petitioner quit his job with Detroit Automotive in 1978 and that he did learn how to become a welder in 1978. We found petitioner's testimony on this point to be forthright and credible and in short, we are convinced that the Forms W-2 turned over by petitioner reflect the total amount of wages he earned from employers in 1978. [9]
Although we are convinced that petitioner did not have income from employers in 1978 in excess of $12,659.06, we are not convinced that petitioner did not have some income from self-employment in 1978. Over the years petitioner has held a variety of jobs and for 1975, 1976, and 1977, petitioner reported income of $3,150, $6,914.14 and $822.93, or an average of $3,629, from his porcelain repair business. Petitioner did not present any evidence to show the amount of time the welding classes occupied in his working day, and he has totally failed to establish that he was not engaged part time in his porcelain repair business or some other business from January to July 1978, *398 while he attended the welding classes. Using our best estimate, we hold petitioner had $1,500 [10] of gross income from self-employment in 1978. [11] Petitioner has failed to prove the amounts of any deductible business expenses he may have incurred in 1978. The second issue is whether petitioner is subject to self-employment tax *399 under section 1401. Section 1401 imposes a tax on the self-employment income of every individual. Due to our finding that petitioner had $1,500 of self-employment income from his business, we hold that petitioner is liable for the self-employment tax on such amount. The final issue is whether petitioner is liable for various additions to tax. Respondent determined that petitioner was liable for four additions to tax. Petitioner has the burden of proving that he is not liable for the various additions to tax. Welch v. Helvering,290 U.S. 111, 115 (1933). The first addition to tax determined by respondent is under section 6651(a)(1) for petitioner's failure to file an income tax return for 1978. Although petitioner filed a Form 1040, it contained no information relating to his income and deductions, and, therefore, did not constitute a "return" within the meaning of section 6012. Hatfield v. Commissioner,68 T.C. 895 (1977). White v. Commissioner,72 T.C. 1126, 1129 (1979); Porth v. United States,426 F.2d 519 (10th Cir. 1970). Petitioner has failed to show that his failure to file a timely return was due to reasonable cause and thus he is liable for the addition to tax under section 6651(a)(1). *400 The second addition to tax determined by respondent is under section 6651(a)(2) for petitioner's failure to timely pay the amount of taxes shown to be due on his return for 1978. Since we have held that the form 1040 filed by petitioner was not a return, this addition to tax does not apply. [12]
The third addition to tax determined by respondent was imposed under section 6653(a) for negligence or intentional disregard of the rules and regulations. Again, petitioner failed to offer any evidence to show that his underpayments of tax were not due to the intentional disregard of rules and regulations or to negligence and, therefore, the additions to tax determined pursuant to section 6653(a) must be sustained. The fourth and final addition to tax determined by respondent was imposed under section 6654 for underpayment of estimated tax. Petitioner has totally failed to show that he is not liable for the addition to tax imposed under section 6654 which is mandatory, and, accordingly, we sustain an addition to tax on any additional estimated tax petitioner was required to pay under the facts we have found. [13] *401 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable year in issue.↩
2. The double asterisks referred to petitioner's objections under the Fourth and Fifth Amendments of the U.S. Constitution↩ to having to provide the information requested on the Form 1040.
3. The Form W-2 for Detroit Automotive did not indicate what time period petitioner worked there. However, based upon the evidence presented, we have concluded that petitioner worked for Detroit Automotive during the first 3 months of 1978.↩
4. For the years 1975, 1976, and 1977, petitioner reported adjusted gross income from the business of $9,750.61, $7,190.11, and $3,509.03, respectively.↩
5. See Miller v. Commissioner,T.C. Memo 1981-296; Baker v. Commissioner,T.C. Memo 1978-60, affd. 639 F.2nd 787 (9th Cir. 1980), cert. den. 451 U.S. 1018↩ (1981).
6. Wheeling v. Commissioner,T.C. Memo. 1982-246↩.
7. We note that petitioner produced a Form W-2 from Detroit Automotive which we have attributed to the first 3 months of 1978. See Fn. 3, supra.↩
8. Respondent also argues that not every week between July and Dec., 1978 was covered by the Forms W-2 turned over by petitioner, and that therefore, petitioner may have had unreported income during this period as well. Our discussion in the taxt regarding the period of January through June 1978 applies equally here.↩
9. We also note that employers are required to submit a copy of the Form W-2 to the Internal Revenue Service. Respondent has not produced any other Forms W-2 to rebut petitioner's testimony.↩
10. This estimate is based upon the average amount of self-employment income petitioner had in his porcelain repair business from 1975 through 1977, taking into consideration that petitioner could have only been employed part time in the business or some other business due to his attending welding classes and working for various employers in 1978. ↩
11. We further note that we see no basis for respondent's reliance upon the high↩ budget figures in computing petitioner's taxable income. The evidence indicates that petitioner and his family lived modestly. Petitioner had very little taxable income in earlier years, petitioner worked intermittently in 1978 and attended welding school for about 3 months. Furthermore, the W-2 forms for the last half of 1978 indicate that during that period petitioner earned less than half of the high budget figures used by respondent.
12. See Rev. Rule 76-562, 1976-2 C.B. 430↩.
13. Pursuant to sec. 6654(e)(2) the $628.10 withheld on petitioner's wages is deemed a payment of estimated tax and petitioner should therefore receive a credit for such amounts. Sec. 31(a). However, we cannot determine from the record whether petitioner was required to pay any estimated tax. This can be resolved by the parties in the computations under Rule 155.