DONALD JAMES KALGAARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONALD J. KALGAARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kalgaard v. Commissioner
Docket Nos. 22812-82, 24212-83.
United States Tax Court
T.C. Memo 1984-283; 1984 Tax Ct. Memo LEXIS 391; 48 T.C.M. (CCH) 206; T.C.M. (RIA) 84283; May 29, 1984. Peter R. Stromer, for the petitioner. Donna J. Rice, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These consolidated cases were assigned to and heard by Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7456(c) and (d) [1] and General Order No. 8 (81 T.C. XXIII) (1983). The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE DINAN, Special Trial Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Section 6653(a)
Year
Deficiency
Additions to Tax
1978
$1,875.00
$94.00
1979
6,203.00
310.00
*392 After concessions by the parties, [2] the issues for decision are (1) whether purported contributions in 1978 and 1979 to the Universal Life Church are deductibel, and (2) whether any part of petitioner's underpayment of tax for 1978 and 1979 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Rodeo, California, when he filed his petitions in these consolidated cases. During 1978 and 1979, petitioner was the ordained minister of Charter No. 26809 of the Universal Life Church, Inc. (ULC). Petitioner's home in Rodeo, California, was the Church's headquarters. The church had a checking account with Lloyds *393 Bank of Pinole, California. Petitioner was the sole signatory on that account. The church account proceeds were used to pay for swimming pool passes, gas for petitioner's automobile, cleaning of petitioner's clothes, and "those types of things." On his 1978 and 1979 returns, petitioner claimed charitable contribution deductions of $5,942 and $15,362, respectively, for amounts deposited to the church's checking account at Lloyds Bank and to 13 other ULC charter checking accounts. [3] Respondent disallowed the amounts claimed as charitable contributions and asserted additions to tax under section 6653(a). OPINION I. The Summaries
Initially, we deal with petitioner's request, on brief, that we reconsider our evidentiary ruling at trial excluding from evidence two printed statements from Bishop R. E. Imbeau, Ph.D., Vice-President, Universal Life Church, Inc., Modesto, California, purporting to evidence its receipt of petitioner's alleged contributions to it in 1978 and 1979. At trial, petitioner introduced into evidence the testimony of Robert E. Imbeau, who identified the statements *394 in dispute as his computation of the contributions made by petitioner to the ULC, Modesto, in 1978 and 1979. To qualify the statements, the witness testified that "[t]he information on [these statements] has been kept in the normal course of business." The objection by respondent to the introduction of the statements offered was sustained for failure to establish a foundation. These statements were properly excluded under Rule 1006, Federal Rules of Evidence.Rule 1006 provides that summaries of voluminous documents may be presented provided, however, that the original source documents themselves are made available to opposing parties. The only material produced by petitioner to support the statements were some checks written in 1979 to various charters of the ULC. Because Robert Imbeau testifed that he had not seen those checks before signing the statements, the checks are not source documents for purposes of Rule 1006. Petitioner refused to produce any documents underlying the summary statements. Placing source documents at the Disposal of the adverse party is the only safeguard against falsification in the preparation of summaries. *395 Here, cross-examination of Robert Imbeau concerning the trustworthiness of the computations and conclusions in the statements was frustrated by the absence of material claimed to support them. We adhere to our prior ruling. II. Charitable Contributions
Petitioner argues that he is entitled to deductions for charitable contributions made to the ULC in 1978 and 1979. He bears the burden of proving that he is entitled to the deductions disallowed by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The record is completely devoid of any admissible evidence which would substantiate the charitable contribution deductions claimed by petitioner on his 1978 return. Petitioner, therefore, has failed to carry his burden for that year and we sustain respondent's determination. With regard to the taxable year 1979, petitioner's argument in support of the deduction claimed is that the contributions were made to the ULC, Modesto, itself, and not his own ULC charter. [4] There is absolutely nothing in the record, however, to support this contention. *396 A large number of the checks that petitioner made out to the ULC were deposited into the church charter account at Lloyds Bank over which he had the sole signatory power. As to the checks deposited to other ULC charter accounts, [5] there is nothing in the record to establish that these accounts were controlled by or operated in conjunction with or as part of the ULC, Modesto. We have strong reservations concerning the testimony of Robert Imbeau, vice-president of the ULC, Modesto, that the Modesto church had control over all the ULC charter accounts to which petitioner allegedly contributed. We did not find Robert Imbeau to be a persuasive witness and he failed to provide any evidence to indicate how such control was exercised. Petitioner has completely failed to prove that he donated any cash or property to the ULC of Modesto. Welch v. Helvering,supra;Rule 142(a). We reject petitioner's offhanded contention that, in denying his deductions for charitable contributions, this Court is impermissibly deciding a constitutional issue under the holding of the Supreme Court in Northern Pipeline Construction Co. v. Marathon Pipeline Co.,458 U.S. 50 (1982). *397 We are not, as petitioner maintains, ruling on the bonafide religious character of the ULC, Modesto. We reiterate our holding that petitioner plainly has failed to prove he made any charitable contributions to the Modesto church. Moreover, the holding in the Northern Pipeline Construction Co. case does not affect the jurisdiction of this Court to decide constitutional issues. Rowlee v. Commissioner,80 T.C. 1111, 1114-1115 (1983); Simanonok v. Commissioner,     F.2d    , 84-1 USTC par. 9460 (11th Cir. 1984). III. Section 6653(a) Additions to Tax
As to the section 6653(a) additions to tax, petitioner has the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Since he offered no testimony or other evidence to show that his underpayment of tax was not due to negligence or intentional disregard of the revenue laws, we sustain the Commissioner's determinations. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for 1978 and 1979, unless otherwise indicated.↩
2. At trial, petitioner substantiated contributions of $351.25 made in 1979 to various charitable organizations. Respondent never questioned the correctness of deductions for these contributions and we deem him to have conceded petitioner's entitlement to a charitable contribution deduction of $351.25 in 1979.↩
3. The record reveals that $9,447 in 1979 was deposited to these "other accounts."↩
4. We have repeatedly held that the ULC Modesto and the organizations it charters do not constitute one tax-exempt church. See Davis v. Commissioner,81 T.C. 806↩ (1983), and cases cited therein.
5. See footnote 3.↩