T.C. Memo. 2018-9

UNITED STATES TAX COURT

TAMATHA D. BYRUM AND MICHEAL B. BYRUM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17400-16.                    Filed January 25, 2018.

<u>Mark H. Westlake</u>, for petitioners.

<u>William B. McClendon</u> and <u>William W. Kiessling</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  The issues for decision are whether petitioners received unreported income, whether petitioners are liable for a section 6651(a)(1) addition to tax, and whether Mrs. Byrum is liable for section 6663 fraud penalties.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code relating to the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                    FINDINGS OF FACT

During 2003, 2004, and 2005 (years in issue) Mrs. Byrum was employed as the president of Team Systems, LLC (Team Systems), which was wholly owned by Steven Guynn. Team Systems designed and maintained software that enabled contract furniture dealers to create bids, place orders, and generate delivery documents.

Prior to joining Team Systems, Mrs. Byrum worked at Corporate Environments of Tennessee as a contract furniture dealer and at Taylor Impressions as an assistant to the company's certified public accountant (C.P.A.). In 1994 Mrs. Byrum began working at Team Systems and attending accounting classes at Nashville Tech. She was hired because of her experience working with Team Systems' software at Corporate Environments of Tennessee and initially worked in technical support answering customer questions regarding use of the software. Eventually, Mrs. Byrum was moved to Team Systems' accounting department.

In 2001 Mr. Guynn decided to semi-retire from Team Systems. He continued writing updates for the software but did not manage the daily needs of the business or regularly visit the office. Instead, he promoted Mrs. Byrum to Team Systems' president and increased her salary to $120,000. She was the "face

[*3] of the company", interacted with customers, managed the business, and oversaw all of the company's finances (e.g., payroll, accounts payable, and accounts receivable).[2] Mr. Guynn did not closely monitor Team Systems' finances and relied exclusively on Mrs. Byrum to advise him regarding the financial status of the company.

Mrs. Byrum was the only employee with access to Mr. Guynn's signature stamp and authority to write manual and computer-generated checks. From 2003 through 2005 Mrs. Byrum, without authorization, wrote to herself Team Systems checks ranging from $526 to $18,000 (i.e., 29 checks totaling $63,800 in 2003, 58 checks totaling $164,888 in 2004, and numerous checks totaling $168,190 in 2005).

During the years in issue Mr. Byrum owned and operated a custom motorcycle business. From 2003 through 2005 Mrs. Byrum used her Team Systems American Express and PayPal account to purchase motorcycle parts for Mr. Byrum's business. Mrs. Byrum made 16 purchases totaling $5,267 in 2003, 96 purchases totaling $23,581 in 2004, and 112 purchases totaling $56,036 in 2005. The purchases ranged from $16 to $2,500. Team Systems' C.P.A. prepared

---

[2]In addition to depending on Mrs. Byrum to run his business, Mr. Guynn and his wife trusted Mrs. Byrum to organize a myriad of highly sensitive personal matters.

[*4] its financial statements and tax returns relating to the years in issue. Mrs. Byrum prepared and provided Team Systems' financial information to the C.P.A., but omitted any information relating to the unauthorized Team Systems checks or American Express PayPal purchases.

In late 2005 Mr. Guynn began negotiations to sell Team Systems, and in January 2006 he sold Team Systems to a Texas company for $8 million. After the sale, Mr. Guynn became concerned that the purchasers would move the company or fire Mrs. Byrum. To reward her loyalty and many years of employment, and to ensure her financial stability after the sale, Mr. Guynn paid Mrs. Byrum a $254,397 bonus.

On April 15, 2004 and 2005, petitioners timely filed their joint 2003 and 2004 Federal income tax returns, and filed their joint 2005 Federal income tax return on October 25, 2006.[3] Petitioners did not report on their 2003 and 2004 returns any income relating to the unauthorized Team Systems checks. In 2005 petitioners reported the funds received from the unauthorized Team Systems checks as self-employment income. They did not report any income relating to the American Express PayPal purchases on their 2003, 2004, or 2005 tax return.

_____

[3]Petitioners received an extension until October 15, 2006, to file their 2005 return.

**[*5]**  In May 2006 petitioners' 2003 and 2004 Federal income tax returns were selected for examination.  Revenue Agent Stephanie Hunter asked Mrs. Byrum to explain the Team Systems checks written to her and deposited in her bank account.  Mrs. Byrum stated that the deposits were loans approved by Mr. Guynn, provided Revenue Agent Hunter with a document that delineated the deposits, and asserted that the document was an accounts receivable ledger.  Revenue Agent Hunter informed Mrs. Byrum that if the deposits were wages, Team Systems would be liable for additional employment taxes.  Mrs. Byrum stated that she did not wish to involve Mr. Guynn and offered to pay Team Systems' additional employment tax liabilities.  Suspicious of Mrs. Byrum's explanation, Revenue Agent Hunter asked for Mr. Guynn's contact information, and Mrs. Byrum provided her office phone number and the wrong address.  Revenue Agent Hunter then independently obtained Mr. Guynn's address and sent him a letter asking him to call her.  Mr. Guynn contacted Revenue Agent Hunter, and she asked him to verify the loans that he had made to Mrs. Byrum.  When Mr. Guynn denied having ever loaned money to Mrs. Byrum, Revenue Agent Hunter faxed him the document provided by Mrs. Byrum.  Mr. Guynn did not recognize the document, explained that he had designed Team Systems' accounting software, emphasized that the document was not created in the company software, and further assisted

[*6] Revenue Agent Hunter in her examination. Mr. Guynn also provided a statement to the Tennessee Bureau of Investigation, and Mrs. Byrum was subsequently indicted, arrested, and charged with embezzlement, fraud, and forgery.[4]

On May 10, 2016, respondent issued petitioners a notice of deficiency relating to the years in issue. In the notice, respondent determined that the funds received from unauthorized Team Systems checks and the American Express PayPal purchases were income to petitioners. Accordingly, respondent further determined 2003, 2004, and 2005 deficiencies of $15,293, $58,265, and $17,039, respectively; a section 6651 addition to tax of $852 relating to 2005; and that Mrs. Byrum was liable for section 6663 fraud penalties of $11,470, $43,699, and $12,779 relating to 2003, 2004, and 2005, respectively. On August 8, 2016, petitioners, while residing in Mount Juliet, Tennessee, timely filed a petition with the Court.

OPINION

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).

---

[4]At the time of trial, Mrs. Byrum's criminal case was pending in Tennessee State court.

[*7] During trial Mrs. Byrum repeatedly contradicted herself and vacillated between identifying the additional Team Systems checks and American Express PayPal purchases as loans or gifts approved by Mr. Guynn. Respondent established the transactions were not gifts or loans. Accordingly, we sustain respondent's determinations relating to unreported income. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent has met his burden of production and, by clear and convincing evidence, established that Mrs. Byrum understated income with the intent to commit fraud. See secs. 6663(a), 6751(b)(1), 7454(a); Petzoldt v. Commissioner, 92 T.C. 661, 700-702 (1989) (stating fraudulent intent may be inferred from "badges of fraud"). Mrs. Byrum's testimony to the contrary was inconsistent, contradictory, and simply not credible. Indeed, her penchant for dissembling was on full display.

Mrs. Byrum scrupulously concealed the Team Systems checks and American Express PayPal purchases from Mr. Guynn, Team Systems employees, and Team Systems' C.P.A.; gave respondent a bogus accounts receivable ledger and misleading contact information relating to Mr. Guynn; and consistently failed to report Team Systems checks relating to 2003 and 2004 and American Express PayPal purchases relating to 2003, 2004, and 2005. See Holland v. United States, 348 U.S. 121, 139 (1954) (holding that a pattern of consistently and substantially

[*8] underreporting income may justify an inference of fraud); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983) (stating that a taxpayer's attempts to mislead the Internal Revenue Service or prevent the collection of income tax may establish the requisite fraudulent intent). Because respondent established by clear and convincing evidence that Mrs. Byrum filed false or fraudulent returns with the intent to evade tax, the assessment period remains open. See secs. 6501(c)(1), 7454(a); Rule 142(b).

Petitioners untimely filed their 2005 joint Federal income tax return. Pursuant to section 7491(c), respondent bears and has met his burden of production relating to section 6651(a). Petitioners' failure to timely file their return was the result of willful neglect, not reasonable cause. Accordingly, petitioners are liable for the section 6651(a)(1) addition to tax relating to 2005.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

for respondent.