BRUCE AND KATHLEEN CLOWER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD CONZALOVICH AND SHARON CONZALOVICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clower v. Commissioner
Docket No. 6915-86; 27869-86; 4189-88; 4190-88; 4191-88; 4192-88
United States Tax Court
T.C. Memo 1990-74; 1990 Tax Ct. Memo LEXIS 74; 58 T.C.M. (CCH) 1408; T.C.M. (RIA) 90074; February 15, 1990
Robert H. Williams, for the petitioners. Ted Marascuilo, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: In these consolidated proceedings, respondent determined the following deficiencies and additions to tax: Additions to Tax Docket
Under Sections No.
Petitioners
Year
Deficiency 6653(a) [1]
6653(b) 6915-86
Bruce and
Kathleen Clower
1980
$ 50,228.50
$ 2,516.83
$  - 0 -  27869-86
Ronald and Sharon
Conzalovich
1979
17,854.16 - 0 -  8,927.08
27869-86
Ronald and Sharon
Conzalovich
1980
5,527.84
- 0 -  2,763.92
*75 Alternatively, [2] respondent determined the following liabilities against petitioners as transferee: Docket No.
Petitioner Liability
4189-88
Sharon Conzalovich *
$  70,000.00 plus interest
4190-88
Ronald Conzalovich
70,000.00 plus interest
4191-88
Bruce Clower
105,000.00 plus interest
4192-88
Kathleen Clower *
105,000.00 plus interest
*76 We must decide the following issues: (1) whether petitioners received unreported taxable income during the years at issue, and if so, the amount thereof and whether such income is subject to self-employment tax; (2) whether petitioners Bruce L. Clower and Kathleen Clower are liable for the addition to tax for negligence under section 6653(a) for taxable year 1980; (3) whether petitioners Ronald Conzalovich and Sharon Conzalovich are liable for the addition to tax for fraud under section 6653(b) for taxable years 1979 and 1980; and (4) whether, if the Court finds that petitioners did not receive unreported taxable income as set forth in respondent's notices of deficiency, petitioners are liable as transferees of Barry Clower, for the amounts determined by respondent. FINDINGS OF FACT At the time their petitions were filed, petitioners were residents of New Jersey. Petitioners Bruce Clower and Sharon Conzalovich are siblings of each other. Barry Clower was a brother of petitioners Bruce Clower and Sharon Conzalovich. Barry Clower died on October 11, 1985. Marion Clower is the mother of petitioners Bruce Clower and Sharon Conzalovich and was the mother of Barry Clower. During *77 the years in issue Marion Clower lived in Barry Clower's home in Hammonton, New Jersey. From 1974 until 1980, Barry Clower was employed at Matthey-Bishop, Inc., of Winslow, New Jersey ("Matthey-Bishop"), which was in the business of extracting precious metals, chiefly gold and platinum, from petroleum products. Matthey-Bishop later changed its name to Johnson-Matthey, Inc. From 1977 until 1980 when he was fired from the company, Barry Clower held the position of group leader for chemical processing. While working at Matthey-Bishop, Barry Clower had access to its inventory of precious metals. Sequoia Numismatics ("Sequoia"), Zayba Analytical Services ("Zayba") and Wilmot's were each in the business of analyzing, buying, and selling precious metals. Barry Clower established a pattern of giving his mother, Marion Clower, a bag to deliver to Zayba. In exchange for each such bag, Marion Clower would receive a slip of paper on which a dollar amount was shown, which Marion Clower in turn would give to Barry Clower. Subsequently, Marion Clower would take the slip of paper to Zayba and receive in exchange for it a check issued to Marion Clower. Marion Clower would cash the check at *78 the local bank and give the cash to Barry Clower. Sequoia, Zayba and Wilmot's issued checks in aggregate amounts to payees indicated as follows: No. of
Checks Making
Tax
Aggregate
Up Aggregate
Year
Payor
Payee
Amount
Amount
1977
Sequoia
Barry Clower
$      8,686.96
17
1978
Sequoia
Barry Clower
11,132.20
12
1978
Sequoia
Marion Clower
6,358.58
10
1978
Wilmot's
Barry Clower
60,676.71
2
1978
Zayba
Marion Clower
15,066.16
5
1979
Zayba
Marion Clower
725,404.18
77
1980
Zayba
Marion Clower
370,013.18
20
Total
$ 1,197,337.97 143
Barry Clower received nearly all of the proceeds of the foregoing checks. On his Federal income tax returns, Barry Clower reported the following gross income: Taxable Year
Reported Gross Income
1976
$ 13,756.00
1977
12,955.00
1978
13.041.00
1979
13,149.99
1980
4,408.90
During 1979 and 1980, Barry Clower made large cash purchases. He remodeled his house, bought at least two motor vehicles for his own use, installed a swimming pool on his property, installed a 100 foot TV tower on his property, *79 bought a camcorder, bought his mother a new car, and bought his sister Pat a new car. At all relevant times, Bruce Clower and Kathleen Clower were husband and wife. During 1979, relying on Barry Clower's promise to get Bruce Clower a job at Matthey-Bishop, Bruce Clower and Kathleen Clower both quit their jobs and relocated to New Jersey. In 1979, Bruce Clower and Kathleen Clower bought a house in Williamstown, New Jersey, from Ronald Conzalovich and Sharon Conzalovich for total consideration of $ 1.00, which was sold in 1983 for approximately $ 41,000.00. During 1980, Bruce Clower and Kathleen Clower made large cash purchases. They purchased a house on Columbia Road, Hammonton, New Jersey. At settlement on April 16, 1980, they paid the following amounts: Purchase Price:
$ 45,000.00
Settlement Charges:
783.45
Local Taxes
58.50
Total
$ 45,841.95
The settlement charges and local taxes were paid in cash. The $ 45,000.00 purchase price was paid in cash to the realtor, who in turn converted it into three cashier's checks. There was no mortgage on the property. The house was located near the residence of Barry Clower and Marion Clower. Subsequently, *80 during 1980 Bruce Clower and Kathleen Clower razed the house on Columbia Road and built a new home on the lot. Bruce Clower and Kathleen Clower paid the home's total cost of $ 45,000.00 in consecutively marked $ 100 bills to the contractor who built the home. Also during 1980, Bruce Clower purchased a new 1981 Buick Regal from the Arnold Buick dealership for $ 10,555.00, of which $ 5,555.00 was paid in cash by Bruce Clower and $ 5,000.00 was paid in cash by Barry Clower. Bruce Clower and Kathleen Clower reported gross income on their 1979 and 1980 Federal income tax returns of $ 6,706.00 and $ 1,085.00, respectively. At all relevant times, Ronald Conzalovich and Sharon Conzalovich were husband and wife. From late 1972, Ronald Conzalovich was employed at Matthey-Bishop, until 1982 when he went on leave due to a back injury. He returned to Matthey-Bishop in May of 1983. During 1978 and through 1981, Sharon Conzalovich and Barry Clower maintained a joint checking account and a joint savings account at Heritage Bank. During 1979 and 1980, Ronald Conzalovich and Sharon Conzalovich made large cash purchases. In 1979, they bought a new 1979 Dodge Ram Charger from Parisi Motors, *81 Inc., for $ 10,393.05, paying the purchase price in cash. On March 10, 1979, Ronald Conzalovich and Sharon Conzalovich arranged to purchase a house on Moss Mill Road, Egg Harbor City, New Jersey for $ 40,000.00. Sharon Conzalovich paid $ 8,000.00 in cash as a down payment toward the purchase price. At settlement on May 8, 1979, Ronald Conzalovich and Sharon Conzalovich paid an additional $ 19,512.45 in cash. The mortgage on the property was $ 15,000.00. During 1979, Ronald Conzalovich and Sharon Conzalovich contracted with Anthony Franchetti to put a new roof on the barn of the Moss Mill Road property for $ 12,500.00. In June 1979 Ronald Conzalovich paid Mr. Franchetti $ 6,000.00 in cash in consecutively numbered bills toward the contract, which was never completed. In October 1979, Ronald Conzalovich and Sharon Conzalovich bought a new 1980 Chevrolet Camaro from Fred Ray Chevrolet for $ 10,543.13. The purchase price of the car was paid by making a $ 5,000.00 cash down payment and paying $ 5,543.13 cash on delivery. During 1980 Ronald Conzalovich and Sharon Conzalovich contracted with Frank Schaefer to put an addition on the front of the Moss Mill Road house and remodel *82 the kitchen. The total contract price of $ 22,000.00 was paid in cash. Ronald Conzalovich and Sharon Conzalovich reported gross income on their 1979 and 1980 Federal income tax returns of $ 13,087.00 and $ 13,196.00, respectively. In the latter part of 1982, an investigation of Marion Clower was begun by respondent after respondent received several currency transaction reports indicating that Marion Clower cashed numerous checks for large amounts of money. When first contacted by respondent during the investigation on December 22, 1982, Marion Clower falsely indicated under oath that she had sold precious metals for a man named either "Bill" or "Joe" who she had met in a bar. Marion Clower did not file Federal income tax returns for the taxable years 1977 through 1980. When first contacted by respondent during the tax investigation of Marion Clower on February 1, 1983, Bruce Clower and Kathleen Clower told respondent's agents that they had not received any money from Barry Clower. Bruce Clower and Kathleen Clower falsely claimed that they had saved $ 60,000.00 from their salaries and from sales of model trains. They also falsely claimed that they received an additional $ *83 60,000.00 from the sale of a stamp collection. On March 7, 1984, Marion Clower wrote a note to the Internal Revenue Service falsely stating that she had made loans to Bruce Clower and that the loans partially had been repaid. As noted above, in their petitions and in their testimony at trial, Bruce Clower and Kathleen Clower claim that the funds in question were gifts from Barry Clower. When they were first contacted by respondent during the investigation of Marion Clower on February 2, 1983, Ronald Conzalovich and Sharon Conzalovich falsely told respondent's agents that they had cash savings in the amount of $ 40,000.00 at home. They also denied receiving any cash gifts. When Ronald Conzalovich and Sharon Conzalovich returned to the office of the Internal Revenue Service to sign the transcript of the February 2, 1983 interview, they falsely stated that the correct cash on hand that they possessed during the period in question was $ 60,000.00, rather than the $ 40,000.00 originally claimed. During a conference in May of 1984 in the Office of District Counsel in Newark, New Jersey, Ronald Conzalovich and Sharon Conzalovich falsely claimed through their attorney that the source *84 of the additional funds revealed by respondent's source and application of funds was loans from Marion Clower. They also falsely claimed that those loans were being repaid periodically. Sharon Conzalovich pleaded guilty to perjury in Federal District Court as a result of lying under oath regarding the source of the funds in issue in the instant case. As noted above, in their petitions to this Court and in their testimony at trial, Ronald Conzalovich and Sharon Conzalovich claim that such funds were gifts from Barry Clower. There is no documentary evidence of any gifts or loans having been made by Barry Clower or Marion Clower to any of petitioners during 1979 or 1980. Barry Clower was indicted for income tax evasion under section 7201 for the taxable years 1978 and 1979, as well as for conspiracy to evade payment of income tax under 18 U.S.C. section 371 (1982) for 1978 and 1979. He was never indicted for stealing precious metals from Matthey-Bishop. Barry Clower died prior to the time that petitioners filed their petition claiming that the source of the funds in issue was gifts from Barry Clower. The cause of Barry Clower's death was suicide. On *85 April 10, 1986, respondent issued a notice of deficiency to Barry Clower determining deficiencies in tax and additions to tax as follows: Taxable Year
Deficiency
Section 6653(b)
1977
$   2,649.07
$    1,324.54 1978
57,138.60
28,569.30 1979
454,596.79
227,298.40 1980
223,233.21
111,616.61 No petition was filed on behalf of Barry Clower or by his estate and the amounts set forth in the notice of deficiency issued to Barry Clower (plus statutory interest) were assessed after the ninety-day period for filing a petition in the Tax Court expired. No will of Barry Clower's was offered for probate, nor was any representative ever appointed to represent his estate. No Federal estate tax return was ever filed by or on behalf of the estate of Barry Clower. No gift tax return was ever filed by Barry Clower for any of the periods in issue. As of the time of trial, the outstanding Federal income tax assessment against the estate of Barry Clower, including additions to tax and interest, was $ 2.2 million. At some point between June, 1987 and June, 1988, respondent seized and sold Barry Clower's home for $ 13,000.00. The proceeds of that sale *86 were applied against Barry Clower's outstanding tax liability. Despite respondent's efforts as of the time of trial, no other assets of Barry Clower's estate had been located which could have been applied to the liability. Marion Clower acknowledged in her sworn testimony at trial that she lied to protect Barry Clower and that she would lie again to help her other children. OPINION The dispute in the instant case centers around whether the source of the funds admittedly received by petitioners is nontaxable gifts from Barry Clower as contended by petitioners. Because the burden of proof is of substantial importance in the instant case, we point out at the outset that the burden is on petitioners to prove that respondent's determinations are wrong. Rule 142(a). The fact that respondent's determinations are based upon alleged illegal income does not affect petitioners' burden. The rule requiring respondent to make an initial showing which links a taxpayer to illegal, income-producing activity does not apply when the receipt of funds is undisputed. Tokarski v. Commissioner,87 T.C. 74, 76-77 (1986); *87 Schad v. Commissioner,87 T.C. 609, 618-619 (1986). For Federal tax purposes, it is well established that a gift must proceed from a detached and disinterested generosity, motivated by affection, respect, admiration, charity or the like, with the most critical factor being the transferor's intention. Duberstein v. Commissioner,363 U.S. 278, 285 (1960). Because the transferor, Barry Clower, was not available to testify as to his intention with respect to the funds in issue, we must look to other indirect evidence of that intent. The only evidence of Barry Clower's intent offered by petitioners is the testimony of petitioners and Marion Clower. Before commenting on that testimony, it is helpful to keep in mind the setting in which the funds in issue came into petitioners' possession. Barry Clower and his brother-in-law, petitioner Ronald Conzalovich, both worked for a company that extracted gold and platinum from petroleum products. Barry Clower had access to those metals. Marion Clower, Barry Clower's mother, cashed over a million dollars' worth *88 of checks from buyers of precious metals and gave the proceeds to Barry Clower. From those facts, respondent would have us conclude that Barry Clower, his mother, and petitioners were involved in a conspiracy to embezzle precious metals from Matthey-Bishop. While the circumstances appear suspicious, we think there is too little direct evidence in the record for us to reach that conclusion. The facts in the record do create such a cloud over the characterization of the funds in issue as gifts, however, that we conclude that petitioners have failed to prove that they were gifts. We have taken into account the familial relationship between Barry Clower and petitioners. However, the circumstances in the instant case negate any possible inference that gifts were intended. Petitioners' case fails in large part due to the fact that there is no reliable documentation (or documentation of any kind, for that matter), to support petitioners' contention that the transfers were gifts. Given the suspicious nature of the circumstances surrounding the funds in issue, petitioners' failure to document with evidence that gifts were intended from Barry Clower is fatal to their case. The only evidence *89 offered by petitioners is their own self-serving testimony and the testimony of Marion Clower. We note that we are not bound to accept taxpayer's self-serving testimony as gospel, if it is improbable, unreasonable, or questionable. Pascarelli v. Commissioner,55 T.C. 1082, 1095 (1971), affd. 485 F.2d 681 (3d Cir. 1973). We are "free to analyze the surrounding circumstances and to draw reasonable inferences therefrom which would negate [a taxpayer's evidence of his subjective intent]." Fleischer v. Commissioner,403 F.2d 403, 406 (2d Cir. 1968), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner,87 T.C. at 77. That is not to say, however, that taxpayers can never prove a gift through their own unsubstantiated testimony. Obviously, where the taxpayer's testimony is sufficiently credible or substantiated by other credible evidence we are free to find that a gift occurred. Arguably, the testimony of each of the petitioners might be said to substantiate that of the others, if we were willing to accept such *90 testimony as corroboration of the alleged gift. We are not willing to accept such substantiation, however, for two reasons. First, and most obviously, the close relationships among petitioners causes us to believe their testimony to be biased. Second, and more importantly, because petitioners have evidenced a manifest penchant for lying about the source of the funds in issue, we are unwilling to believe that they are now telling the truth. Petitioners' numerous false statements about the source of the funds in issue brings to mind the maxim that once a lie is told, it is much easier to do it again, and again, "till at length it becomes habitual." T. Jefferson, Letter to Peter Carr - August 19, 1785. Petitioners contend that respondent has not proved that petitioners were involved in a conspiracy with Barry Clower to embezzle precious metals from Matthey-Bishop. As we indicated above, we agree. Petitioners' argument, however, misses the point -- petitioners have the burden of proving that the funds in issue are not income. Respondent's theory is one possible explanation of the source of the funds, but he does not have to prove it in order to prevail on the deficiencies. Petitioners *91 offer their current version of the source of the funds in issue, admitting their previous false statements and offering as their excuse for lying, their motivation to protect Barry Clower and Marion Clower. In their attempt to ameliorate the effect of their lying, petitioners posit that the instant case involves only "one falsehood," namely the failure to identify Barry Clower as the source of the funds in issue. We, however, do not find petitioners' "one falsehood" argument very comforting. Even if the lies amounted to only "one falsehood," we note that they were made repeatedly. We also note that Sharon Conzalovich pleaded guilty to perjury as a result of lying under oath regarding the source of the funds in issue in the instant case. Moreover, we think little of petitioners' motivation for lying about the source of funds in the instant case. That their false statements would protect Barry Clower is not the only possible motivation for making them. In fact, we have doubt as to whether petitioners are telling the truth about their motivation. Furthermore, because petitioners will be liable for taxes if they do not prove a nontaxable source of the funds in issue, petitioners' *92 motivation to lie now is as great as it was when they allegedly were lying to protect Barry Clower and Marion Clower. The testimony of Barry Clower, absent some sort of documentation of the alleged gifts, appears essential to substantiating petitioners' allegation that he gave the funds in issue to petitioners with the intention of making gifts. Unfortunately, however, Barry Clower was not available to testify and he left no clue regarding his intent with respect to such funds. In short, after having the opportunity to observe the demeanor of the witnesses during their testimony at trial, we are not convinced that the current version of the source of the funds in issue is the truthful one. We therefore hold for respondent with respect to the deficiencies. We next turn to the liability of petitioners Ronald Conzalovich and Sharon Conzalovich for the addition to tax for fraud under section 6653(b). Respondent bears the burden of proving for each year, by clear and convincing evidence, that some part of the underpayment is attributable to fraud. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); *93 Rule 142(b). To meet his burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud never will be presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970); however, it may be proved by circumstantial evidence because direct proof of a taxpayer's intent rarely is available. Rowlee v. Commissioner, 80 T.C. at 1123; Gajewski v. Commissioner, 67 T.C at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 224 (1971); Otuski v. Commissioner, 53 T.C. 96, 106 (1969). Fraud may not be found under "circumstances *94 which at most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. at 1144. While we have held above that petitioners have failed to prove that the funds in issue were nontaxable gifts rather than taxable income, in carrying his burden on the fraud issue, respondent cannot rely on petitioners' failure to carry their burden of proof with respect to the underlying deficiencies Habersham-Bey v. Commissioner, 78 T.C. 304, 311-312 (1982). Rather, respondent must prove that petitioners, in fact, received unreported taxable income, as one element in sustaining his burden of proof. The necessary proof may come from evidence which demonstrates a "likely" taxable source of the funds in question. Holland v. United States, 348 U.S. 121 (1954). Respondent contends that petitioners Ronald Conzalovich and Sharon Conzalovich participated in and received income from the illegal "trafficking in goods pilfered from [Matthey-Bishop]." As evidence of that contention, however, respondent points only to the attempted concealment of the funds in issue by petitioners Ronald *95 Conzalovich and Sharon Conzalovich through their dealing in cash and their false statements. While dealing in cash and making false statements are badges of fraudulent intent, they are not clear and convincing proof of an understatement of taxable income. Although the evidence in this case suggests that Barry Clower may have received funds through embezzlement from Matthey-Bishop, respondent has offered no evidence directly linking petitioners Ronald Conzalovich and Sharon Conzalovich to such activities, but has merely raised suspicions about their alleged involvement. Mere suspicions are insufficient to clearly and convincingly prove a fraudulent understatement. Katz v. Commissioner, 90 T.C. at 1144. As we stated in Jones v. Commissioner29 T.C. 601, 619 (1957): "just as the petitioners failed to show that the [amounts] in controversy did not in some substantial part represent income, the respondent has similarly failed to prove that the amounts in question were income, and the mere showing on his part that there was a failure to report *96 as income items which insofar as shown by the evidence could in some part have been either income or nonincome items does not establish that, by reason of the omission of such items, the returns were false and fraudulent with intent to evade tax." [Emphasis added]. On this record, we are thus unwilling to find fraud. Accordingly, petitioners Ronald C. Conzalovich and Sharon Conzalovich are not liable for the fraud addition to tax. We turn next to the negligence addition determined against Bruce Clower and Kathleen Clower for taxable year 1980. For that year, section 6653(a) provided that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioners Bruce Clower and Kathleen Clower bear the burden of proving they are not liable for the addition to tax for negligence or intentional disregard of rules and regulations. Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Rule 142(a). Negligence is the lack of due care or failure *97 to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners argue that respondent has the burden of making out a primafacie case under Kilborn v. Commissioner, 29 T.C. 102 (1957), affd. in part and revd. in part, 58-2 USTC para. 9847, 2 AFTR 2d 5812 (5th Cir. 1958), revd. sub nom. United States v. Hime Pontiac, 360 U.S. 715 (1959). Petitioners appear to have misinterpreted what we said in Kilborn. In Kilborn, neither the notice of deficiency nor the Commissioner's brief made any mention of the grounds upon which the negligence addition was determined. We stated that we were persuaded by the record as a whole that there were insufficient grounds to impose the negligence addition "particularly in light of complete failure on the part of the respondent and his counsel to make any representations in rebuttal of petitioner's evidence and argument as to just what the acts of negligence supplying the basis for the respondent's determination were." 29 T.C. at 112. In sustaining the taxpayer in Kilborn *98 , we based our opinion on the record, implying that the taxpayer had met his burden; we did not say that respondent had the burden of establishing a primafacie case. In the instant case, while specific grounds for the imposition of the negligence addition are not spelled out in the notice of deficiency, respondent does make arguments based on the record. Respondent relies upon the huge gap between unreported and actual income reported by petitioners Bruce Clower and Kathleen Clower on their return for 1980, i.e., $ 112,000.00 versus $ 1,085.00. Respondent also argues that petitioners Bruce Clower and Kathleen Clower admitted to intentionally misleading respondent. Last respondent argues that petitioners Bruce Clower and Kathleen Clower have not carried their burden of proving that they were not negligent. Petitioners Bruce Clower and Kathleen Clower argue that their failure to report income was due to "an honest misunderstanding of the law that gifts are not taxed." We are not persuaded by petitioners' argument. Petitioners' failure to prove that the funds in issue were gifts was due in part to their failure to produce any documentation of that fact, contemporaneous *99 or otherwise. Petitioners failed to keep any records regarding the transactions in issue and instead transacted in cash. Such actions could be construed as an effort to conceal the true nature of the transactions and are not those which reasonably and ordinarily prudent persons would take under the circumstances involved in the instant case. Petitioners' remaining argument that respondent has been inconsistent in his treatment of petitioners with respect to the additions to tax has been considered and is found to be without merit. Accordingly, we hold that the imposition of the negligence addition determined against Bruce Clower and Kathleen Clower for taxable year 1980 is appropriate. Our resolution of the foregoing issues renders it unnecessary to address the remaining issues. Accordingly, to reflect the foregoing Decisions will be entered as follows: for respondent in docket No. 6915-86; for respondent in docket No. 27869-86 without the fraud addition; and for petitioners in docket Nos. 4189-88, 4190-88, 4191-88, and 4192-88.
Footnotes
1. Unless otherwise indicted all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In their petition and their testimony at the trial of the cases at docket numbers 6915-86 and 27869-86 with respect to the income tax deficiencies, petitioners admitted receipt of the funds in issue but claimed that such funds were nontaxable gifts from Barry Clower. At the close of trial the parties agreed to continue the cases at docket numbers 6915-86 and 27869-86 to allow respondent to issue the notices of liability at issue in the cases at docket numbers 4189-88, 4190-88, 4191-88, and 4192-88. Accordingly, respondent issued separate notices of transferee liability to each petitioner. The notices of transferee liability issued to Bruce Clower and Kathleen Clower determined that they were jointly and severally liable for Barry Clower's unpaid tax liability to the extent of $ 105,000.00 plus interest provided by law. The notices of transferee liability issued to Ronald Conzalovich and Sharon Conzalovich determined that they were jointly and severally liable for Barry Clower's unpaid tax liability to the extent of $ 70,000.00 plus interest provided by law. The cases involving those notices of transferee liability were then consolidated with the cases involving the income tax deficiencies and the Court subsequently tried the cases involving the notices of transferee liability. For convenience, we will hereinafter refer to these consolidated cases as the instant case.↩
*. amount of liability asserted is a duplication of that asserted against such petitioner's husband. ↩