RICHARD J. TONER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JANICE E. TONER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Toner v. Commissioner
Docket Nos. 10826-80, 13639-80
United States Tax Court
T.C. Memo 1990-539; 1990 Tax Ct. Memo LEXIS 593; 60 T.C.M. (CCH) 1016; T.C.M. (RIA) 90539; October 17, 1990, Filed *593 Decisions will be entered under Rule 155. From November 1976 through December 1978 H and W operated a massage and prostitution business and W made calls for purposes of prostitution. They did not report income from these activities on their 1976 Federal income tax return, and they did not file 1977 and 1978 returns. In June 1978 the business was raided by the Pennsylvania State Police, who confiscated the records of the business. Petitioners were convicted of various prostitution-related offenses in April 1979. On numerous occasions during the years at issue, H beat W and he threatened to kill her and their children. In May 1979, W filed charges against H, who subsequently was convicted of various assault-related offenses. Held: income and expenses of the massage and prostitution activities are determined. Held further: W's argument that she was merely a conduit for H's income is rejected, and she is not relieved of income tax liability for the years in issue. Held further: W's argument that she signed the 1976 joint income tax return under duress is rejected. Held further: H and W are liable under section 1401 for self-employment tax on self-employment *594 income. Held further: H but not W is liable under section 6653(b) for additions to tax for fraud for 1976 and 1977, but neither is so liable for 1978. Held further: W is not liable under section 6653(a) for negligence or under section 6651 for failure to file a return in 1977, and neither H nor W is liable under these sections in 1978. Held further: H and W are liable for additions to tax for failure to pay estimated income tax under section 6654(a) in 1977 and 1978. Richard J. Toner, pro se. Peter Goldberger and Pamela Wilk, for petitioner Janice E. Toner. Russell K. Stewart, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION These cases were assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. *597 OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: In a notice of deficiency dated April 15, 1980, respondent determined the following deficiencies in petitioners' 1976, 1977, and 1978 Federal income taxes: Year
Deficiency
Section 6653(b)
Section 6654
1976
$  1,719.00
$    860.00  -    1977
41,577.00
20,779.00  $ 1,625.00 1978
10,519.00
5,260.00  337.00 These deficiencies were determined at the tax rates applicable to married individuals filing jointly. Petitioner Richard Toner timely filed his petition in this case on June 26, 1980, and respondent answered on August 26, 1980. Janice Toner timely filed her petition on July 16, 1980, and respondent answered on September 22, 1980. By Amendment to Answer dated November 2, 1988, respondent asserted increased deficiencies on the ground that because neither petitioner filed a return for 1977 or 1978, the correct rates for determining petitioners' liabilities for those years are those applicable to married individuals filing separate returns. In a second Amendment to Answer dated March 31, 1989, respondent asserted increased deficiencies for all three years *598 on the basis of information obtained at trial which respondent had been unable to obtain before trial. The deficiencies as finally asserted in the amendments to answer are as follows: Richard Toner, Docket No. 10826-80:
Year
Deficiency
Section 6653(b)
Section 6654
1976 *
$  4,848.00
$  2,424.00  -
1977
54,818.00
27,409.00  $ 1,954.00
1978
36,144.00
18,072.00  1,154.00
Janice Toner, Docket No. 13639-80:
Year
Deficiency
Section 6653(b)
Section 6654
1976 *
$  4,848.00
$  2,424.00  -
1977
98,365.00
49,183.00  $ 3,500.00
1978
78,981.00
39,491.00  2,521.00
The issues for decision are (1) whether petitioners had gross receipts from an out-service massage and prostitution *599 business as determined by respondent in his notices of deficiency and asserted in his amendments to answer; (2) whether petitioners are entitled to business expense deductions in excess of those allowed by respondent in his notices of deficiency; (3) whether petitioner Janice Toner is relieved of income tax liability for all years in issue on the ground that she was merely a conduit for income on which petitioner Richard Toner properly was subject to tax; (4) whether petitioner Janice Toner is relieved of liability for Federal income tax in 1976 on the ground that she signed the joint 1976 tax return under duress; (5) whether petitioners are liable under section 1401 for self-employment tax on 1976, 1977, and 1978 self-employment income; (6) whether petitioners are liable under section 6653(b) for the addition to tax for fraud; (7) if petitioners are not liable for the addition to tax for fraud, whether petitioners are liable for the additions to tax under section 6653(a) for negligence and under section 6651 for failure to file income tax returns for 1977 and 1978; and (8) whether petitioners are liable under section 6654 for the addition to tax for failure to make estimated tax payments *600 in 1977 and 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. At the time Richard Toner filed his petition in this case he was an inmate of the Rockview Prison in Bellefonte, Pennsylvania. At the time Janice Toner filed her petition, she was in protective custody at an undisclosed location. Petitioners Richard Toner and Janice Toner were husband and wife during 1976 through 1978 and lived in Lansdowne, Pennsylvania. Sometime during the late 1960's, Richard Toner formed Ideal Distributors, Inc., as a home heating and plumbing business. The business never incurred any income tax liability prior to 1976. Richard Toner was employed by others as a heating and air conditioning mechanic for most of 1976. In addition, petitioners operated an "out-call" massage and prostitution business in November and December of 1976 and for all of 1977 and 1978. When petitioners started their business in late 1976, Janice Toner was the only masseuse/prostitute, but eventually other women were employed. Janice Toner participated in the management of the business by making journal *601 entries to the books of Ideal Distributors, Inc., by reconciling accounts, by paying bills, and by helping with the payroll. She also maintained personnel files on the women and advised them occasionally on questions of dress, safety, and pricing for acts of prostitution. Petitioners opened checking accounts at various banks in the Philadelphia area on behalf of Ideal Distributors, Inc. Both petitioners were signatories to the corporate bank accounts. Both petitioners deposited receipts from the massage and prostitution business to these accounts, and both petitioners drew checks on these accounts. The massage and prostitution business accepted cash, checks, and credit cards in payment for services. Credit card transactions were payable to Ideal Distributors, Inc. On April 5, 1977, Janice Toner prepared petitioners' joint 1976 Federal income tax return. Janice Toner entered all figures and performed all computations on the return. None of the income from the out-service massage business or from prostitution was included on the 1976 return. On the night before she prepared the 1976 tax return, one of Janice Toner's customers had held her at gunpoint for several hours and *602 raped her. Richard Toner and Janice Toner did not file individual Federal income tax returns for 1977 and 1978. No Federal tax return for the massage and prostitution business ever was filed. All parties have treated Ideal Distributors, Inc., as a nullity or at most a nominee throughout these proceedings. Janice Toner and others who took telephone calls from customers gathered information about the callers and recorded it on 3 by 5 index cards. The cards stated the customer's name and address, the means of identification he used, the date, time, and duration of each appointment, the masseuse, the fee charged and received, and other information about the customer. The cost of a massage was between $ 15 and $ 30, and the average charge was $ 25. When the women performed acts of prostitution for their customers, they charged additional fees. Customers paid an average of $ 50 as tips or additional fees on 50 percent of the calls made. The business arrangement was that the women were allowed to keep all tips and fees for acts of prostitution and were required to turn over the massage fees to the business. The 3 by 5 index cards did not reflect tips or fees charged or paid for *603 acts of prostitution. The massage business had a gross income of $ 6,797 in 1976, $ 100,977 in 1977, and $ 36,375 from January 1 to June 30, 1978. Of these amounts, $ 2,000 in 1976, $ 12,000 in 1977, and $ 7,500 from January 1 to June 30, 1978, was attributable to Janice Toner's services as a masseuse. In addition, Janice Toner had gross income from tips or prostitution in the amount of $ 2,000 in 1976, $ 12,000 in 1977, and $ 7,500 from January 1 through June 30, 1978. One of the women employed in the massage and prostitution business had been arrested previously for prostitution and had agreed to cooperate with the police in an investigation of petitioners' business. Acting on this woman's information, a Pennsylvania State policeman posed as a customer for Janice Toner in order to obtain information on petitioners' illegal activities. As a result of his investigation, on June 30, 1978, the police entered petitioners' premises, arrested them, and seized the books and records of the business. Petitioners were charged in Delaware County, Pennsylvania with the promotion of prostitution, conspiracy, and related offenses. Janice Toner also was charged with prostitution. Between *604 their arrest and their trial in March of 1979, petitioners continued to operate the massage and prostitution business. The volume of business transacted was reduced by approximately one-half as a result of unfavorable publicity from the raid. The business had gross receipts of $ 18,000 from July 1 to December 31, 1978. In addition, the number of calls Janice Toner made declined by about one-half. She had gross income of $ 3,750 from tips or prostitution during the last six months of 1978. On April 19, 1979, Janice Toner was convicted of the offenses with which she had been charged in Delaware County. She did not appeal the conviction. She also pleaded guilty on May 10, 1979, to a prostitution offense in Montgomery County, Pennsylvania. Richard Toner also was convicted of the offenses with which he was charged. He appealed, but the judgment was affirmed. When petitioners' premises were entered in June 1978, the Pennsylvania State Police seized all of petitioners' records. Approximately 3,800 index cards containing information on customers, the business checkbooks and bank records, the books of account, and charge account receipts payable to Ideal Distributors, Inc., were *605 included among the confiscated records. Respondent's agents inspected these records while they were in the possession of the police. Two boxes of records were turned over to respondent by the Delaware County authorities. The remaining records were held for several years and then destroyed pursuant to a destruction order. Petitioners are unable to provide significant documentary evidence to substantiate the amount of their business expenses, at least partly because their business records were confiscated and most of them subsequently were destroyed. The evidence available, primarily testimony, indicates that in the massage business petitioners incurred approximately the following deductible business expenses: Expense
1976
1977
1978
Phone
$   100
$  4,800
$ 3,600
Electricity
100
600
600
Heat
120
360
360
Supplies
- 240
180
Advertising
1,200
7,200
3,600
Post office box rental
- 100
100
Pagers
- 1,344
1,008
Lease of car
- * 2,400
* 2,400
Insurance
- * 300
* 300
Wages
Women
- 7,200
3,600
Men
- 10,000
7,000
Rent
200
1,200
1,200
Depreciation
- 2,200
4,400
TOTALS
$ 1,720
$ 37,944
$ 28,348
*606 In addition, petitioners are entitled to adjustments to income for bad checks and charges in the following amounts: Business
$ 510
$ 7,573
$ 4,078
Janice Toner
150
900
844
Petitioners quarreled frequently during their marriage, and Richard Toner often became violent during their arguments. On occasion Janice Toner had to seek out-patient medical care for injuries inflicted by Richard Toner. Her doctor frequently observed cuts and bruises from other beatings. Janice Toner left home on several occasions to escape abuse. For example, in June 1976, she went to a shelter in Philadelphia with her children. When Richard Toner learned that she was there, he threatened to shoot people coming out of the shelter if she did not return home. The argument continued after her return home until he fired a gun in her direction. On another occasion, he threatened to shoot her and the children. Richard Toner's abuse of Janice Toner became *607 more frequent during the years they were operating the massage and prostitution business. On April 24, 1979, after their convictions but prior to sentencing, petitioners had an argument during which Richard Toner severely beat Janice Toner. The following day she stopped by her doctor's office on the way to an assignment. The doctor treated her injuries, which included a broken nose, and helped her devise a plan to escape from Richard Toner. On May 3, 1979, Janice Toner and her children left their home and went to a shelter for abused women. The following day the Court of Common Pleas, Delaware County, entered an order in favor of Janice Toner against Richard Toner for temporary protection from abuse. Later that month, Richard Toner was charged with criminal offenses against Janice Toner, including aggravated assault and reckless endangerment. Richard Toner was convicted of these offenses on March 4, 1980, and the conviction was affirmed on appeal. He was sentenced to eight to sixteen years' imprisonment and was still incarcerated at the time of trial of this tax case. Janice Toner's sentencing hearing on her conviction for prostitution took place in June 1979. At the hearing, *608 she argued that she had committed acts of prostitution under duress, and she was placed on probation. During the summer of 1989, at the time for briefing this case, petitioner Richard Toner was incarcerated in the State Correctional Institution at Cresson, Pennsylvania. Richard Toner requested that the institution librarian furnish him a complete set of 26 U.S.C.A. and volumes of the United States Tax Court Reports from volume 30 to the present. The prison librarian sought an inter-library loan from the State Library of Pennsylvania, which replied that petitioner's request was for an unreasonable amount of material. The prison librarian asked Richard Toner to give specific citations, and when he did not do so, denied his request. On July 17, 1989, petitioner Richard Toner filed a Motion to Extend Time to file a brief. An order granting an extension until September 15, 1989, was issued on August 4, 1989. On September 18, 1989, petitioner filed a Motion to Reconsider the Order of August 4, 1989, or in the alternative, to Stay Proceedings "until 60 days after petitioner receives all the necessary law books needed to guarantee him meaningful access to this Court." That motion *609 was denied by order of October 25, 1989. Petitioner Richard Toner did not file a brief in this case. Richard Toner had his own copy of 26 U.S.C.A. Both respondent and counsel for Janice Toner served copies of their briefs on Richard Toner and sent him copies of cases cited in their briefs. The briefs include arguments on each side of various positions adopted by Richard Toner. The deficiencies and additions to the tax which we have sustained arise from his stipulations of gross income and his failure to present convincing evidence at trial that he was entitled to greater business expense deductions than we have allowed or to convince us that his failure to report income was not due to fraud. OPINION Respondent's determinations as to petitioners' tax liability are presumed correct, and petitioners have the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). Respondent, on the other hand, has the burden of proof as to fraud and as to any new matter or increases in deficiency. Rule 142(b) and Rule 142(a). 1. Gross receipts *610 from massage and prostitution activities
The parties stipulated that the gross receipts of the business were $ 6,797 in 1976, $ 100,977 in 1977, and $ 36,375 from January 1 to June 30, 1978. Petitioners' gross receipts from July 1 to December 31, 1978, and Janice Toner's additional income from tips and prostitution from the inception of the business until December 31, 1978, remain at issue. Respondent's determination of petitioners' gross receipts was based upon entries on the 3 by 5 index cards seized during the search of petitioners' premises on June 30, 1978. Petitioners testified that they continued in business after the raid on June 30, 1978, but that the negative publicity from the raid had a substantial impact on their receipts. Respondent asserted deficiencies for the second half of 1978 on the assumption that the business was unaffected by the raid. Respondent, who bears the burden of proof as to deficiencies asserted in the amendments to answer, has failed to present any evidence as to the volume of petitioners' business after the raid. We are persuaded that the volume of petitioners' business was reduced by approximately one-half after the raid and that the business *611 had gross receipts of $ 18,000 from July 1, 1978 to December 31, 1978. Janice Toner stipulated that the income of the business that was attributable to her work as a masseuse was $ 2,000 in 1976, $ 12,000 in 1977, and $ 7,500 in the first half of 1978. Her average massage fee was $ 25. She testified that she received on average an additional $ 50 per call on one-half of the calls she made, and we believe her testimony on this particular point. Accordingly, we have found that Janice Toner had income from tips or prostitution in the amount of $ 2,000 in 1976, $ 12,000 in 1977, $ 7,500 from January 1 through June 30, 1978, and $ 3,750 from July 1 through December 31, 1978. We are persuaded that petitioners were unable to collect on various checks or charges and that some of the prostitutes failed to turn over massage fees received from their clients. We conclude that petitioners did not receive all the income noted on the 3 by 5 cards. Janice Toner testified that approximately one-half of the customers paid cash, and Richard Toner testified that approximately 15 percent of their checks and charges was uncollectible. Our finding is that 7.5 percent of gross income was uncollectible *612 and we have allowed adjustments to income accordingly. 2. Business expense deductions
In his notice of deficiency, respondent allowed the following business expense deductions: 1976
1977
1978
Telephone
20.00
120.00
60.00
Electricity
10.00
60.00
30.00
Heat
25.00
150.00
75.00
Depreciation
42.00
250.00
125.00
Totals
$ 97.00
$ 580.00
$ 290.00
Petitioners contend that their business expenses were much higher than the amounts allowed by respondent, but that their ability to substantiate these expenses was impaired when their business records were confiscated and most of those records subsequently were destroyed. Respondent argues that his determinations should be sustained. Respondent notes that neither petitioner made any attempt to present or obtain records or other documentation of operating expenses or capital expenditures. Generally, taxpayers are required to substantiate claimed deductions and credits by maintaining some type of record. See sec. 1.6001-1(a), Income Tax Regs. Under certain *613 circumstances, when a taxpayer has insufficient records to substantiate claimed deductions, we are permitted to estimate expenses if we are convinced from the record that taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). In making an estimate, we ordinarily bear heavily on a petitioner "whose inexactitude is of his own making." Cohan v. Commissioner, supra at 544. In this case we are convinced that petitioners maintained records which would have enabled this Court to find more deductions than those allowed by respondent. We are also persuaded by the testimony of the Pennsylvania State policeman involved in this case that petitioners expended substantial sums on office furnishings, telephones, a security system, and advertising. Other expenses, such as rent, heat, some insurance, and some automobile expenses, are the usual expenses of conducting an income-producing activity. Furthermore, we find that a strict application of the rule that we must bear heavily on petitioners would lead to an unreasonably harsh result in this case. Janice Toner had fled from her husband in May of 1979 and was living in *614 an undisclosed place in protective custody. Even though Richard Toner was incarcerated shortly after his conviction, she remained in hiding. There is no evidence that she was notified that the records would be destroyed if she did not claim them. Under the circumstances, we believe it would be unreasonable to charge her with failure to retrieve business records for tax purposes as though such failure were entirely her own fault. Richard Toner was incarcerated continuously from 1980 to the time of trial. He states that he never was notified that his business records would be destroyed if he did not claim them, and we find this statement plausible. Even if he had been notified, he might not have been able to recover the records while he was in prison. Petitioners' failure to substantiate business expenses was not entirely of their own making. Petitioner Janice Toner argues on brief that certain items of office equipment should be "expensed" under section 179. The expensing provisions of section 179 were not enacted until 1981, and to avail themselves of the "bonus depreciation" benefits of section 179 in effect in the years at issue, taxpayers were required to make an affirmative *615 election on their tax returns. No such election was made in petitioners' case, and we have disallowed application of section 179. Petitioner Janice Toner also argues that various items of depreciable personal property were placed in service at the beginning of 1977, but she has provided no convincing evidence that the property was not acquired later in the year. Consequently, we have used a half-year convention for 1977 depreciation expenses. We note also that petitioners provide no evidence of the acquisition date of a truck on which depreciation is claimed, and no evidence that an automobile on which they claimed depreciation was purchased for use in their trade or business, so we have disallowed depreciation on these two items. With these exceptions, we have relied substantially on petitioners' claims as to depreciation deductions, as those claims were made in testimony, and have approximated petitioners' business capital expenditures in our effort to make a rough estimate of petitioners' depreciation expenses. We see no need to review at length the evidence from which we have determined the amount of petitioners' depreciation deductions and other expenses. Their records *616 have been destroyed and they have no receipts for any business expenditures. Nevertheless, each petitioner was engaged in a business activity and must have expended funds in such activity. We have testimony that such expenditures may have been substantial. Unfortunately, the witnesses have been required to testify about the amount of expenditures made ten years before the date of trial; petitioners' own testimony is self-serving; some of the witnesses in this case have admitted to testifying falsely under oath in previous judicial proceedings; and one witness had little memory because of an automobile accident. This testimony is all we have, and we know it is correct to some degree. Under these circumstances, our finding is that deductible business expenses in the massage and prostitution enterprises totalled $ 1,720 in 1976, $ 37,944 in 1977, and $ 28,348 in 1978. 3. Janice Toner's "conduit" theory defense
Petitioner Janice Toner argues that she did not perform acts of prostitution of her own volition but was forced by her husband to earn prostitution income. She also claims that he took her earnings from her by force or threat of force. She concludes that she was *617 merely a conduit for income which is properly taxable to him. Respondent opposes this conduit theory. In arguing that she earned prostitution income under compulsion, Janice Toner presented evidence that she was a battered wife. Some of the evidence was provided by persons who admitted previous perjury and by individuals who did nothing to disguise their hatred for Richard Toner. Even so, petitioner Janice Toner established that she was beaten by her husband many times. Christine Grant, Ph.D., testified without compensation as an expert witness for Janice Toner. The value of Dr. Grant's testimony is limited because she did not meet with Janice Toner prior to preparing her expert's report. Instead, Dr. Grant relied on information provided by Janice Toner's attorney and on information obtained from Janice Toner in about four hours of telephone interviews. Dr. Grant's report contains eight pages of factual background and concludes that Janice Toner was "psychologically distressed," that her symptoms "then and now are consistent with post-traumatic stress disorder," and that "Janice Toner did not act voluntarily in any significant sense from 1975 until May of 1979." The evidence *618 presented at trial, which includes the testimony of the family physician who treated Janice Toner and eventually aided her in leaving Richard Toner, is consistent with Dr. Grant's conclusion that Janice Toner was "psychologically distressed" as well as physically injured by the beating by her husband. Nevertheless, we find that petitioner Janice Toner has failed to meet her burden of showing the causal connection between her husband's abuse and her earning of income from prostitution. There is substantial evidence that Janice Toner was an active participant in certain aspects of the prostitution business. We note that she pleaded guilty to a prostitution offense in Montgomery County, Pennsylvania on May 10, 1979, and did not raise the issue of duress until the June 1979, sentencing hearing for her Delaware County conviction. We also have considered her demeanor at trial and the demeanor of her witnesses, and we are not convinced that their testimony about Janice Toner's activities or her state of mind in the years at issue is entirely reliable. We find that the record as a whole does not show that Janice Toner entered into prostitution because she was beaten by her husband or that *619 she engaged in acts of prostitution involuntarily. As for Janice Toner's claim that she turned her earnings over to her husband under compulsion, even if we were to accept the factual contention as accurate, in our view such a contention would not be grounds for relieving her of tax liability. Compare Schuster v. Commissioner, 84 T.C. 764, 773 (1985), affd. 800 F.2d 672 (7th Cir. 1986). Moreover, Janice Toner enjoyed the benefits of her earnings in the form of support for herself and her children. In sum, we are not persuaded by Janice Toner's argument that she was merely a conduit for income which should be taxable to Richard Toner.
4. Janice Toner's duress defense as to her 1976 tax liability
Generally, a husband and wife are jointly and severally liable for any tax or deficiency owed on a joint return. Sec. 6013(d)(3); Davenport v. Commissioner, 48 T.C. 921, 926 (1967). Therefore, the entire tax liability on a joint return may be assessed against either spouse. Davenport v. Commissioner, supra.However, *620 one spouse may avoid liability for the tax owed by showing that a joint return was not made ( Calhoun v. Commissioner, 23 T.C. 4 (1954)), or that her signature was obtained through duress or deception ( Brown v. Commissioner, 51 T.C. 116 (1968)), or by qualifying for relief under the innocent spouse provisions of section 6013(e). A determination of duress must be made under a uniform standard unaffected by variations in State law. Stanley v. Commissioner, 45 T.C. 555, 562 (1966). To show that a joint tax return was signed under duress, a signatory spouse must prove both (1) that there was an inability to resist the coercer's demands, and (2) that he or she would not have signed the return except for the constraint applied to his or her will. Thus, "petitioner must show not only that she had no choice in executing her signature but also that she was 'reluctant' to do so." Brown v. Commissioner, 51 T.C. 116, 119 (1968). A general fear of angering one's spouse is not sufficient, without more, to show that a joint tax return was signed unwillingly. Stanley v. Commissioner, supra.
In the *621 present case, although there is evidence that Janice Toner was abused by her husband, we find that she has failed to present persuasive evidence that he forced her to sign the 1976 return against her will. She testified that one of her massage-prostitution customers had raped her the night before she prepared the return, that she was upset from this experience, and that Richard Toner had suggested that she work on the return in order to take her mind off what had happened. Janice Toner did not testify about protesting this suggestion nor did she indicate that she was unable to function adequately in preparing the return. She testified that when she asked about reporting income from the massage business, Richard Toner told her that the business would report income on a fiscal year and that none of the income need be reported on their 1976 return. She testified that she disagreed with this idea but signed the return anyway. Janice Toner stated that she wanted to include information about the massage business on the 1976 return, but she did not state that she refused to sign the return, and she even failed to deny that she signed it voluntarily. In response to prompting by her attorney, *622 Janice Toner said that she thought Richard Toner would hurt her if she did not sign the return. Considered as a whole, Janice Toner's testimony simply is not sufficient to establish that she was unwilling to sign the 1976 return as she had prepared it, or that Richard Toner made her sign the return by force or threat of force. The evidence as presented in this case does not establish that Janice Toner signed the 1976 joint return under duress. Therefore, she is liable for tax as a signatory to a joint return for that year. 5. Allocation of income and deductions between Richard Toner and Janice Toner
Respondent determined deficiencies on the assumption that Janice Toner and Richard Toner had equal interests in the massage business. Consequently, he determined that they are jointly and severally liable for tax on all net income from the business. Respondent now takes the position that each petitioner should be taxed on half of the business net income. Respondent also asserts that Janice Toner is fully liable for taxes on her tips and prostitution income. According to the business records, Janice Toner was a co-owner of the massage and prostitution business. She *623 also held signatory power over the business bank accounts and participated in some aspects of the management of the business. But the evidence shows that Richard Toner had a strong personality and that most decisions of any consequence were made by him. Janice Toner had little or no control over decisions as to how the income from the business was spent. She and Richard Toner frequently quarrelled about this question, and the evidence shows that he generally prevailed by the use of force. Janice Toner functioned more as a supervisory employee than as a proprietor of the business. In general, she acquiesced in Richard Toner's decisions or followed his directions. The agreement between Richard Toner and the other women who worked for him was that he was entitled only to the money they earned for massages and that they were entitled to keep the balance of their receipts. In providing massage and prostitution services herself, Janice Toner acted in a capacity similar to that of the other women associated with the business. We conclude that Janice Toner's receipts should be allocated in a manner consistent with the rule applicable to the other women. Since petitioners filed a *624 joint return for 1976, it is unnecessary to allocate income between them. Their joint 1976 gross income, as reported, must be increased by unreported gross receipts of $ 6,797 for the massage business and by $ 2,000 for Janice Toner's tips for acts of prostitution. They are entitled to adjustments to income for 1976 for bad checks and charges in the amount of $ 510 for the business and $ 150 for Janice Toner's activities and to business expense deductions of $ 1,720. For 1977, Janice Toner alone realized gross receipts of $ 12,000 for tips or acts of prostitution. She is entitled to an adjustment to income of $ 900 for bad checks and charges, and she may deduct one-half of the $ 2,400 car lease expense and one-half of the $ 300 insurance expense, for total deductions of $ 1,350. The stipulated gross receipts of the massage business in the amount of $ 100,977 are allocated to Richard Toner, and he is entitled to an adjustment to income of $ 7,573 for bad checks and charges. He is also entitled to business expense deductions for 1977 in the amount of $ 36,594. For 1978, petitioner Janice Toner alone realized $ 11,250 from tips and prostitution income and is entitled to an adjustment *625 to income of $ 844 for bad checks and charges. For 1978 she is entitled to deduct one half of the car lease and insurance expenses for total deductions of $ 1,350. Gross receipts of the massage business in the amount of $ 54,375 for 1978 are allocated to Richard Toner, and he is entitled to an adjustment to income for bad checks and charges of $ 4,078. He also is entitled to business expense deductions for 1978 in the amount of $ 26,998.
6. Self-employment tax
Section 1401 imposes a tax on the self-employment income of individuals. Petitioners have self-employment income for 1976, 1977, and 1978 and therefore are liable for the self-employment tax for those years. 7. Addition to tax for fraud
Respondent determined that petitioners are liable for the additions to tax for fraud under section 6653(b). Respondent has the burden of proof on the question of fraud. Sec. 7454(a); Rule 142(b). He can meet the burden by showing with clear and convincing evidence that there is some *626 underpayment of tax and that petitioner engaged in conduct intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. Wedvik v. Commissioner, 87 T.C. 1458, 1468-1469 (1986). Whether any part of any underpayment is due to fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Because direct evidence of the taxpayer's intent is rarely available, respondent may prove fraud through circumstantial evidence. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The taxpayer's entire course of conduct may be used to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Failure to file tax returns, without more, is not proof of fraud. Kotamir v. Commissioner , 86 T.C. 1253 (1986). However, failure to file may be considered in connection with other facts in determining *627 whether any deficiency or underpayment of tax is due to fraud. Beaver v. Commissioner, supra at 93. All of the evidence in this case points to the conclusion that Richard Toner's underpayment of 1976 tax and failure to file in 1977 was due to fraud. He was operating a large-scale business which could be expected to incur tax liabilities. It was an illegal activity which he had an incentive to conceal from the Government. He did not make estimated tax payments or pay FICA or withholding taxes for his employees. He completely omitted his business income from the 1976 return, and he filed no tax returns whatever in 1977. He did not employ accountants or make any effort to determine whether he had taxable income. In short, he did not engage in any conduct that suggests that he ever intended to report the income from his business or pay any tax that was due. The only argument Richard Toner makes on his own behalf is that he thought that no taxes were due because business expenses exceeded income. The evidence in this case shows that Richard Toner spent money freely. The evidence also shows that much of petitioners' money was spent in the business, some *628 on capital expenditures. Under tax laws applicable in 1977 and 1978, the deduction allowed for capital expenditures generally on property used in a trade or business was a "reasonable allowance" for depreciation. Sec. 167. We do not believe that Richard Toner, who is an intelligent man, was unaware of this rule or thought that he could fully deduct his capital expenditures. Furthermore, although Richard Toner frequently lacked funds, we are not persuaded that he thought his shortage of cash gave him reason to conclude that he owed no tax. He has not shown that he or Janice Toner had any source of funds other than income from the business with which to pay personal and living expenses, and the evidence shows that he used income from the business to pay these expenses. Personal and living expenses are not deductible. Sec. 262. We believe that Richard Toner was aware of this rule and deliberately ignored its implications. We conclude that his conduct was intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. Respondent has established Richard Toner's fraud by clear and convincing evidence, and he is liable for additions to tax for fraud *629 for 1976 and 1977. In June 1978 petitioners' records were seized in the raid on their business. Petitioners were tried on criminal charges shortly before the due date for their 1978 return. Under the circumstances, we find that respondent has not met his burden of showing by clear and convincing evidence that either Richard Toner's or Janice Toner's failure to file a 1978 return was a deliberate attempt to conceal, mislead, or otherwise prevent the collection of income taxes. As for Janice Toner's liability for fraud for 1976 and 1977, petitioner Richard Toner stated at trial that "there was no actual tax fraud by her. If there was any fraud, it would have been mine, not hers." On this matter, we agree with Richard Toner. Janice Toner has not proved that she signed the 1976 income tax return under duress, but the fact that she filed a joint 1976 return does not in itself create liability for the fraud addition. Sec. 6653(b); Stone v. Commissioner, 56 T.C. 213, 227 (1971). Respondent has failed to convince us that Janice Toner's underreporting of income in 1976 or *630 failure to file in 1977 arose from an intent to conceal, mislead, or prevent the collection of income taxes for 1976 or 1977. We hold that Janice Toner is not liable for additions to tax for fraud for any year at issue. 8. Additions to tax for failure to file and for negligence
Respondent pleaded in the alternative that if we did not find petitioners liable for additions to tax for fraud under section 6653(b) for tax years 1977 and 1978, each petitioner is liable for additions to tax under section 6651 for failure to file tax returns and under section 6653(a) for negligence. These pleadings were made in respondent's answer and amendments to answer, so the burden of proof lies with respondent. Rule 142(a). On the basis of the record as a whole, we find that respondent has not met his burden of showing that Janice Toner is liable for these alternative additions to tax in 1977 and 1978 or that Richard Toner is liable for these additions to tax for 1978. 9. Addition to tax for failure to pay estimated income tax
Section 6654(a) provides that in case of any underpayment *631 of estimated tax by an individual, an addition to tax is applicable. The provisions of section 6654(a) are mandatory and extenuating circumstances are irrelevant. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Petitioners paid no estimated tax for 1977 or 1978 and therefore are liable for the addition to tax under section 6654 on their separate incomes. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. Jointly with Janice Toner↩
*. Jointly with Richard Toner↩
*. One-half attributable to Janice Toner individually↩