KENNETH KIRKSEY BRITTAIN, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brittain v. Commissioner
Docket No. 1785-90
United States Tax Court
T.C. Memo 1992-277; 1992 Tax Ct. Memo LEXIS 297; 63 T.C.M. (CCH) 3004; May 13, 1992, Filed *297 Decision will be entered under Rule 155. Kenneth Kirksey Brittain, pro se. Helen F. Rogers, for respondent. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)/(b)(1)
Sec. 6653(b)(2)
Sec. 6654
Sec. 6661
1979
$ 14,049
$ 7,025
N/A
$ 585
$ N/A
1980
9,955
4,978
N/A
635
N/A
1981
17,284
8,642
N/A
1,324
N/A
1982
3,119
1,560
[1] 265
N/A
1983
5,437
2,719
[1] 269
1,359
1984
5,877
2,939
[1] 370
1,469
1985
11,254
5,627
[1] 421
2,814
The issues for decision are: (1) Whether petitioner is required to pay Federal income tax on the wage income he received in each of the years at issue. We hold that he is. (2) Whether petitioner failed to report nonemployee compensation income in taxable years 1982 and 1984. We hold that he did. *298 (3) Whether petitioner failed to report taxable unemployment compensation benefits he received in taxable years 1980, 1981, 1982, 1983, and 1984. We hold that he did. (4) Whether the income and loss items received or incurred by petitioner as trustee of the Kirksey Irrevocable Trust are attributable to petitioner in his individual capacity for Federal tax purposes. We hold that they are. (5) Whether petitioner is liable for the additions to tax for fraud, for failure to pay estimated taxes, and for a substantial understatement of income tax as determined by respondent. We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated in this opinion. Petitioner resided in Baltimore, Maryland, when he filed his petition. Petitioner was on the cash basis method of accounting for each of the taxable years 1979 through 1985. Tax Returns
For taxable years 1976, 1977, and 1978, petitioner filed Federal income tax returns. For taxable year 1979, petitioner and his wife, Ethel, filed a protester type joint Federal income tax return. Petitioner did not enter any amounts on any lines *299 of the return. On each line of this return, petitioner typed the word "object" or "none". Attached to this return was a detailed memorandum outlining petitioner's position that he objected to respondent's filing requirements on the grounds of self-incrimination. Petitioner did not indicate that he objected to respondent's filing requirements on any other basis. For taxable year 1982, petitioner and his wife, Ethel, filed a protester type joint Federal income tax return. On this return, petitioner listed $ 17,911 as the total amount of "receipts" he received in 1982. Petitioner then adjusted this amount to $ -0-. In the space beside the adjustment, petitioner typed in "Non-Taxable Receipts (Elisner vs. Macomber 252 U.S.A. 189)". Petitioner reported $ -0- as his adjusted gross income in 1982, and $ 399 as the amount by which he overpaid his Federal income taxes. For taxable years 1980, 1981, 1983, 1984, and 1985, petitioner did not file a Federal income tax return. Forms W-4
During each of the years at issue, petitioner submitted Forms W-4 to employers in which he claimed himself exempt from the withholding of Federal income tax. Petitioner claimed exempt status because *300 he no longer believed he incurred a Federal income tax liability on his wage income. Petitioner stated that he began believing such in 1979 because he could find no legal authority that wages were income within the meaning of the 16th Amendment to the Constitution. Wage Income
During each of the taxable years 1979 through 1985, petitioner was employed as an electrician. Petitioner received wages from this occupation in the years 1979 through 1985 in the respective amounts of $ 37,514, $ 34,181, $ 40,778, $ 17,910, $ 22,719, $ 21,160, and $ 41,946. Respondent determined that petitioner failed to report this wage income. Petitioner testified that he stopped reporting his wages as income because he could find no legal authority that wages were income within the meaning of the 16th Amendment to the Constitution. In 1983 and 1985, petitioner submitted refund claims to respondent in which he informed respondent of his position that wages were not income within the meaning of the 16th Amendment. Nonemployee Compensation
In 1982, petitioner received $ 816 from James Floyd Co. of Ariton, Alabama, for services rendered in selling real estate. Petitioner did not report *301 this amount for Federal income tax purposes. Respondent determined that petitioner failed to report this amount as taxable income. In 1984, petitioner received $ 783 from Comfort Control Center for services petitioner operated out of his home. Petitioner did not report this amount for Federal income tax purposes. Respondent determined that petitioner failed to report this amount as taxable income. Unemployment Compensation
In 1980, petitioner received unemployment compensation benefits in the amount of $ 545. Petitioner did not report this amount for Federal income tax purposes. Respondent determined that petitioner failed to report $ 550 of taxable unemployment compensation income in 1980. Kirksey Irrevocable Trust
In 1978, petitioner created the Kirksey Irrevocable Trust (the trust). Petitioner introduced no evidence indicating his purpose in establishing the trust or indicating who he designated as trust beneficiaries. The trust did not maintain any financial records on its operations or activities. The trust did not file Federal income tax returns or report any income in any of the years at issue. Petitioner testified that he did not file income tax returns *302 on behalf of the trust because the trust showed no profit in any of the years at issue. Petitioner appointed himself sole trustee of the trust. As trustee, petitioner had the power and authority to do and perform every act necessary to be done in the trust name. He was authorized to contract services, cash checks, collect monies, and make all investment decisions on behalf of the trust. He also had the power to buy, sell, and rent property for the trust. Petitioner introduced no evidence indicating what, if any, fiduciary duties were imposed upon him as trustee. To fund the trust, petitioner transferred personal bank accounts, two automobiles, notes receivable, real property, and an investment account. The record indicates that petitioner no longer individually held any income-producing assets. As trustee, petitioner purchased real property on behalf of the trust and established bank accounts in the trust's name. The trust derived interest, rental, and capital gain income from holding, leasing, and/or selling the above-referenced properties. Petitioner did not use funds contained in trust bank accounts to pay for personal expenses. Petitioner personally used one of the *303 trust's automobiles subsequent to its transfer to the trust without compensating the trust for its use. During the years in issue, petitioner as trustee of the Kirksey Trust received interest income from Earl R. Smyth, John P. Kresky, Capital Bank and Trust Company, John Hancock Mutual Life, First National Bank of Commerce, First Interstate Arizona, Rocky Mountain Federal, United Federal Savings and Loan, State Farm Insurance, and Banker's First. The trust received total interest income from these sources in taxable years 1979 through 1985 in the respective amounts of $ 1,886, $ 1,579, $ 1,437, $ 1,256, $ 1,076, $ 949, and $ 814. Respondent determined that petitioner as trustee of the trust failed to report any of this income. In 1979, the trust realized a rental loss in the amount of $ 603. Respondent determined that petitioner as trustee failed to report this loss. In 1980, the trust realized a rental loss in the amount of $ 1,909. Respondent determined that petitioner as trustee failed to report a rental loss in the amount of $ 1,426. In 1981 through 1985, the trust and/or petitioner's wife realized net rental income in the respective amounts of $ 2,076, $ 3,312, $ 4,321, *304 $ 4,056, and $ 4,004. Respondent determined that petitioner as trustee failed to report this rental income in any of these years. During the years in issue, the trust traded in copper and silver. Respondent determined that petitioner as trustee failed to report a capital gain of $ 1,025 in taxable year 1980 from the sale of copper and silver. In October 1980, the trust purchased a personal residence located in Nevada. Petitioner and his family resided in this house and did not compensate the trust for its use. In January 1981, the trust sold the Nevada residence. Respondent determined that petitioner as trustee of the trust realized a capital gain on this sale in the amount of $ 4,692. In January 1981, the trust purchased a personal residence located in Green River, Wyoming. Petitioner and his family resided in this house and did not compensate the trust for occupying the house. Petitioner paid the mortgage payments on the house out of his personal funds. In May 1981, the trust sold the Green River residence. Respondent determined that on the sale date the trust had an adjusted basis in the Green River residence in the amount of $ 61,059, and received sales proceeds in *305 the amount of $ 65,669. Respondent determined that petitioner as trustee of the trust realized but failed to report a capital gain in the amount of $ 4,610 on this sale. In June 1981, the trust purchased a personal residence located in Ariton, Alabama. Petitioner resided in this house and did not compensate the trust to occupy the house. Respondent's Remaining Determinations
In addition to the above-referenced determinations, respondent made the following: (1) Petitioner received yet failed to report unemployment compensation benefits in taxable years 1981 through 1984 in the respective amounts of $ 355, $ 183, $ 2,870, and $ 5,125; (2) petitioner is entitled to employee business expense deductions in taxable years 1980 through 1985 in the respective amounts of $ 4,695, $ 3,983, $ 6,731, $ 6,397, $ 5,821, and $ 6,517; (3) petitioner is entitled to a personal exemption deduction in each of the taxable years 1979 through 1984 in the amount of $ 1,000, and in taxable year 1985 in the amount of $ 1,040; and (4) petitioner is entitled to an interest income exclusion in taxable year 1981 in the amount of $ 200. Respondent also determined that petitioner was liable for the following *306 additions to tax: (1) The addition to tax for fraud pursuant to section 6653(b)/6653(b)(1) [1] in taxable years 1979 through 1985 in the respective amounts of $ 7,025, $ 4,978, $ 8,642, $ 1,560, $ 2,719, $ 2,939, and $ 5,627; (2) the addition to tax for fraud pursuant to section 6653(b)(2) in taxable years 1982 through 1985 in an amount equal to 50 percent of the interest due on the portion of each deficiency attributable to fraud; (3) the addition to tax pursuant to section 6654 for failure to pay estimated taxes in taxable years 1979 through 1985 in the respective amounts of $ 585, $ 635, $ 1,324, $ 265, $ 269, $ 370, and $ 421; and (4) the addition to tax for a substantial understatement of income tax pursuant to section 6661 in taxable years 1983, 1984, and 1985 in the respective amounts of $ 1,359, $ 1,469, and $ 2,814. *307 OPINION Issue 1. Wages as Income Within the 16th Amendment
Congress has the power via the 16th Amendment to the Constitution to lay and collect taxes on income from whatever source derived. Congress has specifically imposed a tax on the income a taxpayer derives from compensation for services rendered. See secs. 1, 61(a), and 63(a). Petitioner did not pay Federal income tax on the amounts he received as compensation for services rendered in any of the years at issue. In 1979, he stopped the withholding of Federal income tax on his wage income and stopped reporting his wage income because he could find no legal authority that wages were income within the meaning of the 16th Amendment. Typical tax protester arguments underlie petitioner's assertion that wages are not income within the meaning of the 16th Amendment. Because this Court has addressed and rejected each of petitioner's arguments on prior occasions, we see no purpose in currently readdressing them. We do, however, direct petitioner's attention to Rowlee v. Commissioner, 80 T.C. 1111, 1121 (1983), and Rice v. Commissioner, T.C. Memo. 1982-129, in which we explained our *308 reasons for rejecting each of his tax protester arguments. We have also reviewed the cases cited by petitioner in support of his position on this issue. None of these cases hold that wages are not subject to Federal income tax. For the foregoing reasons, we sustain respondent's determination that petitioner is required to pay Federal income tax on the wage income he received in taxable years 1979 through 1985. Issue 2. Nonemployee Compensation
Respondent determined that petitioner failed to report nonemployee compensation income in taxable year 1982 in the amount of $ 816, and in taxable year 1984 in the amount of $ 783. Petitioner received but did not report these amounts as taxable income in these years. Accordingly, we sustain respondent's determination. Issue 3. Unemployment Compensation Benefits
Respondent determined that petitioner failed to report $ 550 of unemployment compensation benefits in taxable year 1980. Petitioner received unemployment compensation benefits in this year in the amount of $ 545. Accordingly, we hold that petitioner failed to report unemployment compensation benefits in 1980 in the amount of $ 545. Respondent also determined *309 that petitioner failed to report unemployment compensation benefits he received in taxable years 1981 through 1984 in the respective amounts of $ 355, $ 183, $ 2,870, and $ 5,125. Petitioner introduced no evidence that he did not receive these unemployment compensation benefits in these taxable years. Accordingly, we sustain respondent's determination that petitioner received yet failed to report this income. See Rule 142(a). Issue 4. Economic Substance of Trust
Respondent contends that the Kirksey Trust received or incurred income and losses that are for Federal tax purposes attributable to petitioner in his individual capacity. Respondent asserts that these items are attributable to petitioner because the creation and operation of the trust lacked economic substance. Respondent alternatively argues that these items are attributable to petitioner via the grantor trust provisions contained within sections 671-679. Because we find that petitioner has failed to prove that the trust had any economic substance for Federal tax purposes, we need not address respondent's section 671 argument. For purposes of determining Federal tax liability, the substance of a transaction, *310 rather than its form, controls. Gregory v. Helvering, 293 U.S. 465 (1935). Where entities are created that have no real economic effect and which affect no cognizable economic relationships, the substance of a transaction involving those entities will control over its form. Zmuda v. Commissioner, 731 F.2d 1417, 1420-1421 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980). If a trust has no economic substance apart from tax considerations, the trust is not recognized for Federal tax purposes. Markosian v. Commissioner, supra at 1245; Furman v. Commissioner, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). Whether a trust lacks economic substance for tax purposes is a factual question to be decided on the basis of the facts before the Court. United States v. Cumberland Pub. Serv. Co., 338 U.S. 451 (1950). The burden of proof on this issue is on petitioner. Rule 142(a). For the reasons discussed in the following paragraphs, we find that petitioner has failed *311 to prove that the trust had any economic substance for Federal tax purposes during the years at issue. First, petitioner failed to prove that property was held in trust for the benefit of others. The record does not indicate that petitioner designated trust beneficiaries or that economic interests were ever distributed or were to be distributed to purported beneficiaries. The record does indicate though that petitioner received an economic interest in the trust. That is, he received such by using trust property without compensating the trust for his use. Further, petitioner also failed to prove that he performed any duties as trustee or that, as trustee, he served any valid purpose. The record also does not indicate that anyone or anything existed that could prevent petitioner from acting in derogation of the interests of any purported beneficiaries. The record does not indicate that petitioner was subject to any fiduciary restrictions imposed pursuant to the trust itself or the law on trusts. Further, because petitioner was the grantor and sole trustee of the trust, no other person had any function in the creation, operation, or administration of the trust. Further, petitioner's *312 relationship to the trust's property did not differ in any material aspect before and after the creation of the trust. Instead, as the record indicates, petitioner's relationship to the trust's property was the same as if he held legal title to the property in his individual capacity. That is, petitioner resided in personal residences owned by the trust without paying any rent to the trust and personally utilized an automobile allegedly transferred to the trust without compensating the trust for this use. Petitioner also made mortgage payments on property owned by the trust out of his personal funds. In sum, petitioner failed to prove that he administered the Kirksey Trust like a trust. He also failed to prove that the trust had a valid purpose other than tax avoidance. Petitioner failed to prove such because he introduced no admissible evidence indicating any purpose for establishing the trust. In Markosian v. Commissioner, supra, we held that a trust lacked economic substance for Federal tax purposes where (1) the trust was not administered like a trust, (2) the trust had no valid purpose other than tax avoidance, (3) the relationship of the grantors *313 to the property did not differ in any material aspect before and after the creation of the trust, (4) there was no person independent of the grantors' wishes empowered to prevent them from acting in derogation of the interests of the other beneficiaries, (5) there was no perceived economic interest which passed to the other beneficiaries under the trust arrangement, and (6) the taxpayers did not feel bound by any restriction imposed by the trust itself or by the law of trusts. Id. at 1242-1245. In application of Markosian v. Commissioner, supra, to the instant case, petitioner failed to prove that he administered the Kirksey Trust like a trust and that the trust had a valid purpose other than tax avoidance. Petitioner's relationship to the trust's property did not differ in any material aspect before and after the creation of the trust, and no person existed that could prevent petitioner from acting in derogation of the interests of purported beneficiaries. Finally, petitioner failed to prove that any economic interest passed to persons other than himself and that, as trustee, he felt bound by any fiduciary restrictions. Accordingly, *314 based on our holding in Markosian v. Commissioner, supra, we find that the trust lacked economic substance for Federal tax purposes. In light of this holding, all income and loss items received or incurred by the trust are attributable to petitioner in his individual capacity for Federal income tax purposes. Respondent's specific determinations regarding these income and loss items are contained in the following paragraphs. Respondent determined that petitioner failed to report interest income in taxable years 1979 through 1985 in the respective amounts of $ 1,886, $ 1,579, $ 1,437, $ 1,256, $ 1,976, $ 949, and $ 814. Petitioner, via the Kirksey Trust, received this interest income in these taxable years and did not report it. Accordingly, we sustain respondent's determination. Respondent determined that petitioner failed to report a rental loss in 1979 in the amount of $ 603. Petitioner, via the Kirksey Trust, realized this loss in this year. Accordingly, we sustain respondent's determination. Respondent determined that petitioner failed to report a rental loss of $ 1,426 in 1980. Petitioner, via the Kirksey Trust, realized a rental loss in this *315 year in the amount of $ 1,909. Accordingly, we hold that petitioner failed to report a rental loss in 1980 in the amount of $ 1,909. Respondent determined that petitioner failed to report net rental income in taxable years 1981 through 1985 in the respective amounts of $ 2,076, $ 3,312, $ 4,321, $ 4,056, and $ 4,004. Either petitioner, via the Kirksey Trust, or petitioner's wife realized this income in these taxable years. Petitioner failed to prove that any of this rental income was attributable to his wife. Accordingly, we sustain respondent's determination that petitioner, via the Kirksey Trust, failed to report net rental income in taxable years 1981 through 1985 in the amounts determined by respondent. See Rule 142(a). Respondent determined that petitioner failed to report a capital gain in taxable year 1981 in the amount of $ 4,610 on the sale of the Green River residence. Petitioner, via the Kirksey Trust, purchased the Green River residence in January 1981 and sold it in May 1981. Petitioner presented no evidence disputing respondent's determination regarding the amount of gain realized on this sale. Accordingly, we sustain respondent's determination. See Rule 142(a). *316 Finally, respondent determined that petitioner failed to report a capital gain of $ 1,025 in taxable year 1980 from the sale of copper and silver. Petitioner, via the Kirksey Trust, traded in copper and silver during the years in issue. Petitioner presented no evidence disputing respondent's determination regarding the amount of income derived from this activity. Accordingly, we sustain respondent's determination. See Rule 142(a). Issue 5. Additions to Tax
a. Fraud Respondent determined additions to petitioner's tax for fraud pursuant to section 6653(b) for each taxable year at issue. Respondent has the burden of proving by clear and convincing evidence that petitioner intended to evade paying taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Because fraud can rarely be established by direct proof of a taxpayer's intent, respondent may establish the required quantum of proof by circumstantial evidence. Rowlee v. Commissioner, supra at 1123. The existence of fraud is a question *317 of fact to be determined upon consideration of the entire record. Id. The record in the instant case indicates that petitioner fraudulently intended to evade the payment of income taxes in each of the years in issue. First, petitioner's pattern of intentionally not filing Federal income tax returns is persuasive evidence of his intent to defraud. See Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986). Petitioner did not file Federal income tax returns for 1980, 1981, 1983, 1984, or 1985. Petitioner offered no explanation for his failure to do so. Further, while he filed purported tax returns for 1979 and 1982, such tax protester type returns are not deemed validly filed Federal tax returns. See Kotmair v. Commissioner, supra at 1260 n.6. Because petitioner filed tax returns for taxable years 1976, 1977, and 1978, he demonstrated that he knew of his responsibility to file Federal income tax returns. In sum, petitioner had a pattern of intentionally not filing proper Federal income tax returns. Accordingly, such is highly indicative of his fraudulent *318 intent. However, such is insufficient to independently justify the inference of fraud. See id. at 1260. Petitioner's pattern of submitting erroneous Forms W-4 to avoid the withholding of Federal income tax is further indicative of his fraudulent intent. See Recklitis v. Commissioner, 91 T.C. 874, 910-911 (1988). In each of the years at issue, petitioner submitted W-4 forms to employers on which he claimed he was exempt from the withholding of Federal income tax. Petitioner stated that in 1979 he began believing wages were exempt from Federal income tax. However, petitioner did not assert this position on the tax protester type return he filed for 1979. Further, this position does not explain why petitioner did not report the other types of income he received in the years at issue. While petitioner informed respondent of his position in 1983 and 1985 on the refund claims he filed, we find that the above inconsistencies indicate the implausibility of petitioner's position. We find that petitioner submitted erroneous W-4 forms merely as an attempt to prevent the collection of income taxes that he knew were owing. Such behavior is highly *319 indicative of his fraudulent intent. See Recklitis v. Commissioner, supra at 910-911. Further indicative of petitioner's fraudulent intent is the manner in which he created and operated the trust. When petitioner created the trust, he transferred all his income-producing assets to it. However, as trustee or otherwise, petitioner never reported any of the income these assets produced. Further, when he established the trust, he established it at approximately the same time that he began submitting false W-4 forms, began not filing proper Federal income tax returns, and began claiming that wages were not subject to Federal income tax. The culmination of these facts, combined with petitioner's failure to show that the trust had any purpose other than tax avoidance, indicates that petitioner created the trust as part of an overall plan to prevent the collection of income taxes. After viewing the record as a whole, we find that petitioner began structuring his financial transactions in 1978 and 1979 with the intent to prevent the collection of taxes he knew were owing. Therefore, we find that petitioner fraudulently intended to evade the payment of income *320 taxes in each of the years at issue, and accordingly we sustain respondent's determination that petitioner is liable for the additions to tax for fraud in each of the years at issue. b. Failure to Pay Estimated Tax Petitioner has failed to challenge the additions to tax pursuant to section 6654 for failure to pay estimated taxes. Accordingly, we uphold respondent's determination on this issue. See Rule 142(a). c. Substantial Understatement of Income Tax Petitioner has also failed to challenge the additions to tax for substantial understatement of income tax pursuant to section 6661. Accordingly, if after making the Rule 155 computation, petitioner's understatements in 1983, 1984, and 1985, are substantial within the meaning of section 6661, we sustain respondent's determination that petitioner is liable for these additions in these taxable years. See Rule 142(a). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the underpayment attributable to fraud.↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩